**ANTHONY INDUSTRIES, INC. d/b/a Anthony Pools, Appellant,**

v.

**Michael L. RAGSDALE, et ux., Appellees.**

**No. 2–81–039–CV.**

Court of Appeals of Texas, Fort Worth.

Oct. 14, 1982.

Rehearing Denied Dec. 16, 1982.

Simon & Simon, and Marilyn B. Walker, Fort Worth, for appellant.

Hill, Heard & Oneal, Gilstrap & Goetz, and Frank M. Gilstrap, Arlington, for appellees.

Before MASSEY, C.J., and SPURLOCK and JORDAN, JJ.

## OPINION ON REHEARING

JORDAN, Justice.

We hereby withdraw our opinion of July 22, 1982 and substitute the following opinion:

In a suit for damages under Tex.Bus. & Comm.Code Ann. § 17.46(b)(7) and 17.50 (Supp.1978) for alleged deceptive practices by appellant Anthony Pools, appellees recovered a judgment for $3,300.00 actual damages, trebled, plus a stipulated sum of $155.56, plus attorneys' fees. Anthony, in a limited appeal under Tex.R.Civ.P. 353, appeals primarily on the ground that the Deceptive Trade Practices Act does not apply to this case.

Affirmed in part and reversed in part.

The Ragsdales owned a home in Arlington, Texas which was located on an ex-

tremely steep lot at the foot of a large hill. The house is four levels high, "stairstepping up the hill," with the front door of the house approximately 12 to 15 feet higher than street level. The home owner, desiring to install a swimming pool somewhere on this lot, contacted Anthony Pools, who sent their representative, one Jay Ratliff, to the Ragsdales to discuss plans for the swimming pool.

Because of the peculiar configuration of their lot, the Ragsdales believed that a pool could only be located in their side yard, but were concerned that that side yard might be too small for the installation of a pool. They were also concerned about drainage, according to their testimony. Ratliff assured the Ragsdales that a pool could be put on the side yard without any problem.

The Ragsdales also wanted a rock retaining wall and a flagstone deck around the pool. Ratliff produced a rough sketch showing the location of the house, pool, flagstone deck, and rock retaining wall. He advised the Ragsdales that Anthony Pools did not do stonework, but suggested that they could save money if they contracted for the stonework, that is, the rock retaining wall and the flagstone decking, themselves. The Ragsdales agreed to this.

At the conclusion of this first meeting, Jay Ratliff for Anthony Pools, and Mr. and Mrs. Ragsdale signed a contract for the installation of the pool only. Portions of this contract, which is, we believe, decisive and controlling of this case, will be set out later in this opinion.

A few days after the initial discussion between Ratliff and the Ragsdales, Ratliff delivered to the Ragsdales a set of plans and specifications, consisting of five separate drawings on a single over-sized sheet. These drawings show a cross-section of the hillside and that portion of the hill which was to be cut away for installation of the pool. Another drawing, on the same over-sized sheet, shows the placement of the pool in relation to the house and the location of the flagstone deck and rock retaining wall. It is this plan, relied on by the Ragsdales according to their testimony, which they

say constitute misrepresentations and violations of express and implied warranties, all prohibited by the Deceptive Trade Practices Act.

Shortly thereafter, one Jerry White, representing himself as a partner in "KEES Fireplaces", presented himself to the Ragsdales, with a copy of the pool plans which Jay Ratliff had drawn and shown to the Ragsdales. He entered into a contract with the Ragsdales for the construction of the flagstone decking and the rock retaining wall for the total price of $5,656.00 and about one-half of this price, $2,800.00, was paid to White at the time the contract was signed. It is not shown by the evidence who actually sent White to the Ragsdales, whether it was Ratliff or the savings and loan institution which eventually made a loan to the Ragsdales for $15,000.00, the total construction price.

White never performed any of the stonework, as agreed, but disappeared with the down payment. He has not been seen or heard of since. Charles McKee, the other partner in Kees Fireplaces, eventually finished the construction of the retaining wall and the flagstone decking. From all the evidence, including many pictures, the work done by McKee was shoddy, unprofessional and totally inept, resulting in many problems for the Ragsdales. McKee, for example, laid the flagstones on sand instead of on concrete, and within a week of the completion of his work, the flagstone deck began to buckle and the rock retaining wall began to collapse.

The Ragsdales contacted Jay Ratliff on several occasions and on each occasion Ratliff contacted McKee, who made several attempts to correct his shabby work. His efforts were about as satisfactory as his original work. The retaining wall and flagstone decking were never completed satisfactorily. This caused a severe drainage problem on the Ragsdales's steep lot, and they suffered flooding damage in their house on several occasions.

The Ragsdales then brought suit under the Deceptive Trade Practices Act against both Anthony Pools and McKee. McKee,

however, was never served with citation and was eventually nonsuited. The suit against Anthony Pools was based primarily on sections 17.46(b)(7) and 17.50(a)(2). Basically, appellees pled that Ratliff represented to them that the swimming pool and appurtenances, as shown on the plans and specifications submitted by Ratliff, could be built on the lot without difficulty or problems. They also alleged that Ratliff made many warranties to them with respect to both the pool and the appurtenances, the retaining wall and the flagstone deck, including the materials in and the manner of work performed in the construction of the appurtenances by McKee.

The trial court submitted the case to the jury on 24 special issues and rendered judgment primarily based on the jury's answers to special issues 4, 5, 6, 22, and 24. The jury's finding of $3,300.00 actual damage was trebled under the Deceptive Trade Practices Act.

Although appellant raises 8 points of error, our discussion will be centered primarily on points 1 and 6.

Appellant's first point of error urges error on the part of the trial court in submitting special issues 4, 5 and 6 because the pool construction contract between these parties expressly provided that drainage beyond the pool site was the responsibility of the appellees. Point of error no. 6 maintains that the trial court erred in rendering judgment for treble damages, attorneys' fees and costs based on Tex.Bus. & Comm. Code Ann. § 17.50 (Supp.1978) because the jury findings were legally insufficient to support a judgment under the Deceptive Trade Practices Act.

In answer to special issue no. 4, the jury found that Anthony Industries, Inc., agreed, either expressly or by implication, to provide a plan which, if followed, would provide for adequate control of surface drainage water. In answer to issue no. 5, the jury replied that Anthony failed to provide an adequate plan which, if followed, would provide for adequate control of surface drainage water. To special issue no. 6 the jury said that the failure to provide an adequate plan, as inquired about in issue no. 5, resulted in defects in the drainage system.

Before turning to a discussion of the law of this case, we must first attend to appellee's contention, raised in its reply point no. 1, that by limiting its appeal under Rule 353 only its sixth point of error is before the court. Appellant, in compliance with Rule 353, filed on November 3, 1981, its Notice of Limitation of Appeal, stating therein that it desires to appeal from that portion of the judgment rendered against it in cause no. 96–56517–79 (trial court number) that trebles plaintiff's actual damages and awards attorneys' fees pursuant to section 17.50. The notice went on to state that the portion of the judgment complained about is based upon jury findings to special issue nos. 4, 5 and 6 and is found in the sixth paragraph of the judgment, which it proceeded to quote.

As we understand appellant's Notice of Limitation of Appeal, it complains only of the application of the Deceptive Trade Practices Act and the trebling of actual damages and the awarding of attorneys' fees to appellees. It does not complain of the finding of $3,300.00 actual damages, which, when added to the stipulated carpet damage of $155.56 totaled $3,455.56, nor of the rendition of judgment by the court on those actual damages. The judgment for the $3,455.56 actual damages is supported by the jury's answers to special issues 9, 10 and 22, wherein the jury found negligence, proximate cause and damages as a result of appellant's planning, designing, or installation, or repairs of the surface drainage system.

Since there was no complaint of these finds or the rendition of judgment for actual damages in the amount of $3,455.56, and the appeal was limited to the application of the Deceptive Trade Practices Act and the consequential trebling of damages and awarding of attorneys' fees, we do not disturb the judgment for $3,455.56 actual damages.

■ There is no complaint made that appellant did not comply with the Notice of

Limitation of Appeal under Rule 353. The contention seems to be that appellant is not limiting his appeal as stated in his notice, but that it is attempting to bring the entire case before this court on appeal. We reject this contention. Appellant's points of error 1 through 8 do deal with the judgment of the court trebling the actual damages found by the jury. Special issues 4, 5, 6, 22 and 24 all concern the trial court's application of the Deceptive Trade Practices Act and the trebling of the actual damages found. All of these points of error deal directly with appellant's contention that section 17.50 could not apply to the written contract between these parties. The matters raised in appellant's brief are all properly included in the Notice of Limitation of Appeal. *Johnson v. Downing and Wooten Construction Co.,* 480 S.W.2d 254 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ); *Bridges v. First National Bank in Dallas,* 430 S.W.2d 376 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.).

## PAROL EVIDENCE AS TO MISREPRE-SENTATIONS UNDER SECTION 17.46(b)(7).

It is appellee's position that the jury's answers to special issue nos. 4, 5 and 6 will support a judgment under either of the following three theories: (1) a "laundry list" violation of section 17.46(b)(7); (2) a breach of express warranty; and (3) a breach of implied warranty. With respect to appellee's first theory, it is contended that the presentation to the Ragsdales of the plans and specifications for the entire pool layout by Ratliff, plus his assurances that those plans, if followed, would provide a pool and appurtenances with no problems, drainage or otherwise, was a misrepresentation and violation of section 17.46(b)(7).

Tex.Bus. & Comm.Code Ann. § 17.46(a) (Supp.1982) provides that false, misleading or deceptive acts or practices in the conduct of any trade or commerce are unlawful. Tex.Bus. & Comm.Code Ann. § 17.46(b) (Supp.1982) provides that the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following

"laundry list" of violations, including (7) which reads: "representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another."

Appellees further contend that the parol evidence rule does not prohibit the introduction of testimony as to Ratliff's representations because they were made before the contract for the installation of the pool was executed. The testimony introduced at trial with respect to Ratliff's plans and specifications and his representations, appellees argue, do not vary the terms and provisions of the contract, but simply show a misrepresentation on Ratliff's part which induced the selling of the pool and the signing of the contract. They say that this suit is not brought on the contract but is an action under the Deceptive Trade Practices Act for damages for misrepresentation made before the contract for the pool was signed.

The following cases support this general proposition: *Am. Tr. & Storage Co. v. Brown,* 584 S.W.2d 284 (Tex.Civ.App.—Dallas 1979, *rev'd on other grounds*), 601 S.W.2d 931 (Tex.1980); *United Postage Corp. v. Kammeyer,* 581 S.W.2d 716 (Tex. Civ.App.—Dallas 1979, no writ); *Oakes v. Guerra,* 603 S.W.2d 371 (Tex.Civ.App.—Amarillo 1980, no writ); *Gonzalez v. Global Truck & Equipment, Inc.,* 625 S.W.2d 348 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ).

While we agree with appellee's general proposition stated above, under the evidence in this case, and under the swimming pool contract between these parties, there was no misrepresentation in violation of section 17.46(b)(7); therefore, the parol evidence rule is applicable.

It must be remembered that the only contract between Anthony Pools and the Ragsdales was for the installation of a swimming pool. The other work, the construction of the flagstone decking and the rock retaining wall, involved a second contract under which the work was to be performed by Kees Fireplaces. The Ragsdales were told by Ratliff that all his company would do was to install the pool where the

Ragsdales wanted it. As to the other work, the Ragsdales were advised to hire their own subcontractor, which they did.

The swimming pool contract contains three very important provisions, all pertinent to a decision in this case. Section B.4 reads:

Drainage beyond the pool site is to be provided by Buyer (Ragsdales) and is to meet city and/or county requirements. No grading, other than for pool site preparation, will be done by Anthony unless specified on reverse side of this Contract. (Emphasis ours.)

Section B.6 provides:

The term pool site means the area comprising the water surface area and that portion of the ground surface extending to a distance of not more than four feet (or to a distance required by local Code for minimum decking) from the perimeter of the pool water surface. (Emphasis ours.)

Section B.2 of the Terms and Conditions of the pool contract states:

This contract constitutes the entire Contract, and the parties are not bound by any oral expression or representation by any agent of either party purporting to act for or on behalf of either party or by any commitment or arrangement not specified in the Contract. (Emphasis ours.)

It is undisputed that the swimming pool was properly and professionally installed. The Ragsdales admitted that they had no complaint with the swimming pool and it is also undisputed that the drainage problems did not come from the pool or the pool site. The drainage problems came, according to the testimony of Mr. and Mrs. Ragsdale and their engineer expert, from the excavation site for the retaining wall and the steps built by Kees Fireplaces.

The plans and specifications furnished the Ragsdales for the pool and pool appurtenances were furnished as an extra service to the Ragsdales, with the clear understanding, in the contract as well as between the parties orally at the first meeting, that drainage beyond the pool site was to be the responsibility of the Ragsdales. There is no contention by the Ragsdales, and no evidence, that Ratliff's plans were the reason they contracted with Anthony, or that they would not have contracted for the pool without these plans.

It is also noteworthy that these plans and specifications for the rock retaining wall and the flagstone decking were not made a part of the pool contract. Moreover, a careful analysis of the evidence in this case reveals that Ratliff's representations to the Ragsdales dealt with assurances that a swimming pool could easily be installed on their steep lot. There was no testimony that he represented, nor that he was able to represent, that there would be no drainage or other problems as a result of work done by others.

Section B.1 of the pool contract provides:

Where Buyer has work performed by others that is not provided for in this Contract—such as, but not limited to, electrical panel changes, landscaping and erection of fences and retaining walls— Anthony does not warrant such work, and Anthony shall not be held liable for such work or for loss or damages, if any, which may result therefrom. (Emphasis ours.)

Appellee's own expert testified that the water drainage problems stemmed from the position of the retaining wall and the manner in which the wall was backfilled. Mr. Ragsdale testified that Anthony Pool's construction was not the cause of the drainage problem, and that they (the Ragsdales) knew that under the contract Anthony was not responsible for the retaining wall or the deck work. Mrs. Ragsdale testified that the drainage problems came from the improper construction of the retaining wall put in by Charles McKee. With this factual and contractual background, we now move to the question of whether the presentation of the plans and specifications for the pool and appurtenances by Ratliff, along with his oral assertions, constitute a misrepresentation under section 17.46(b)(7) of the Deceptive Trade Practices Act. With the

wording of that particular subdivision of the statute in mind, we have concluded that the plans and oral statements of Ratliff do not constitute such a misrepresentation. This section speaks of goods or services which are of a particular standard, quality, or grade, style or model, if they are of another.

Apparently the only direct representation Ratliff made with respect to his plans were that those plans for the pool and appurtenances would, if followed, present no problems. This is what the jury found in answer to issue nos. 4, 5 and 6. The jury, in answering those questions, found that Anthony did agree to and failed to provide an adequate plan which, if followed, would provide for adequate control of surface drainage water. We do not think this was the type of representation referred to in section 17.46(b)(7). Ratliff did not represent that these plans were the only plans suitable for the purpose, that they were the best plans, or were excellent or A Number 1. He simply presented the plans to the Ragsdales, to assist them, with the assertion that *if followed* they would present no problems. Moreover, any representations made by Ratliff regarding the retaining wall and the flagstone decking necessarily referred to and involved work done by another, and this cannot be a misrepresentation contemplated by any subdivision of section 17.46(b).

The section of the Act under discussion refers to a misrepresentation of goods or services as to quality, or a particular standard or grade. This was not the type of representation made by Ratliff. See *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex.1980), in support of the above proposition, where the Supreme Court said, referring to Subdivision (7):

> Subdivision (7) prohibits representing that a good is of a particular standard, quality, grade, style, or model if it is of another. Quality is a measure of degree; as to particular goods quality may be calibrated by standard or grade, as with eggs or meat, or specified by style or model, as with machinery. Even when specific categories are not devised, the good may still be described with more general words of quality. Words like "excellent" and "perfect" are words indicating a high degree of quality ... (Emphasis ours.)

■ Having held that the representations, including the plans and specifications, of Ratliff did not violate subdivision (7) of section 17.46(b), we also hold that parol evidence was not admissible to add to or vary the terms of the swimming pool contract. The trial court, therefore, erred in submitting special issues 4, 5 and 6 to the jury because such issues, and the answers thereto, vary, contradict and add to the terms and provisions of the swimming pool contract in violation of the parol evidence rule. *Caviness Packing Co., Inc. v. Corbett*, 587 S.W.2d 543 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *Wilkins v. Bain*, 615 S.W.2d 314 (Tex.Civ.App.—Dallas 1981, no writ); *Benson v. Jones*, 578 S.W.2d 480 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Fort Worth Nat. Bank v. Harrell*, 544 S.W.2d 697 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.)

## PAROL EVIDENCE AS TO EXPRESS OR IMPLIED WARRANTIES

The only other basis for the application of the Deceptive Trade Practices Act in this case, and for the trebling of the damages, has to be a breach of an express or implied warranty under section 17.50(a)(2). The pre-1979 amendment to section 17.50 of the Code, with which we are concerned, provides:

> "(a) A consumer may maintain an action if he has been adversely affected by any of the following: ...
> (2) Breach of an express or implied warranty."

For several reasons we do not believe there is, or could be, any showing of breach of either an express or implied warranty in this case. There is no express warranty finding by the jury, and indeed, no evidence in this record on which to base such a finding. Section B.4 of the pool contract expressly places responsibility for drainage

beyond the pool on the buyers, the Ragsdales. Furthermore, as previously pointed out, section B.1, Warranties, contains all the express warranties contained in this contract. A portion of that section provides that where the buyer has work performed by others that is not provided for in this contract, including but not limited to electrical panel changes, landscaping and erection of fences and retaining walls, Anthony makes no warranty and shall not be held liable for such work.

■ While we have agreed with appellee's contention that the parol evidence rule will not operate to preclude *misrepresentations made* before the contract was executed, we cannot agree that parol testimony of express or implied warranties, not contained in the contract, is admissible. We think that the parol evidence rule does apply here with respect to any warranties. When we talk about misrepresentations under the Deceptive Trade Practices Act, we are talking about statements, promises or representations made before the contract is signed in order to induce the signing thereof. The cases cited above, such as *Am. Tr. & Storage Co. v. Brown, supra; United Postage Corp. v. Kammeyer, supra; Oakes v. Guerra, supra;* and *Gonzalez v. Global Truck & Equip., Inc., supra,* all hold that where misrepresentations under section 17.46(b) are concerned, they are the same as common law fraud before the inception of the Deceptive Trade Practices Act.

■ Fraud has always been an exception to the parol evidence rule, and so, apparently, are misrepresentations under section 17.46(b). Not so, however, with warranties. When warranties, either express or implied, are involved, as contended here by appellees, the contract necessarily is also involved and cannot be altered, contradicted or added to by parol evidence. The parol evidence rule is applicable with respect to warranties and therefore the submission of issues 4, 5 and 6 were improper as in violation of the express terms of the contract involved. Also, the trebling of damages under section 17.50 of the Act, if that was the basis for the trebling, was improper for the same reason.

■ We have been cited to no case, and we have found none, holding warranties, either express or implied, can be added to a written contract by parol testimony.

Under the recent case of *Turner v. Conrad,* 618 S.W.2d 850, 853 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.), it is questionable whether a cause of action for breach of implied warranty is proper in this case, even disregarding the parol evidence rule. In *Turner,* the court said: "Even in cases where implied warranties were deemed existent as applied thereto, it has never been extended to fences, driveways, and ancillary construction in and of themselves, whether erected to be sold at the same time as the principal structure or not. We do not deem any implied warranty to have application."

A case similar to this one on the facts is *Thomas v. Atlas Foundation Co., Inc.,* 609 S.W.2d 302 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). In that case Thomas sued a contractor, Taylor, and a subcontractor, Atlas Foundation Co., Inc., for alleged failure to construct a porch at the Thomas home in a good and workmanlike manner. The jury returned a verdict for the sum of $350.00 against Atlas, the subcontractor, but as to Taylor, the verdict was that Thomas take nothing. The trial court refused to treble the actual damages against Atlas, holding that the Deceptive Trade Practices Act did not apply.

It was shown by the evidence that the Thomases sought out Taylor as a general contractor, who contracted with them to perform certain improvements at their home, including the construction of a porch. Taylor subsequently subcontracted the porch construction to Atlas. Problems with the porch arose, and Thomas sued both Taylor and Atlas. Taylor was acquitted of any liability and Thomas did not appeal as against Taylor, only as against Atlas. The jury found that Atlas failed to construct the porch in a good and workmanlike manner, he had established a cause of action under the DTPA, and that because that

failure was a producing cause of his actual damages the trebling of such damages is mandatory by provisions of the Deceptive Trade Practices Act.

The court, in affirming the action of the trial court in its refusal to treble the damages, said, in part: "However, we disagree with the Thomas' contention that the mere breach of an implied warranty gives rise to a DTPA cause of action. We deem more to be required.... As we read the Act we discern a legislative intent to curb deceptive trade practices, i.e., practices by unscrupulous merchants and manufacturers that are designed to mislead, and who, in the process, induce the public to purchase or contract.... *In the case under scrutiny there is no indication that the subcontractor Atlas was in any way responsible, through omission or commission, for any misleading or deceptive act or policy that induced Thomas to contract with Taylor* ... (Emphasis ours.) *Here we have no indication that Atlas was intended by either Taylor or the Thomases, as of the time of their bargain, to become Taylor's subcontractor.* (Emphasis ours.) Atlas' only wrong is by the perpetuation of a failure of consideration through its breach of implied warranty to properly construct the porch. The Thomas remedy is by the recovery of actual damages and (ordinarily) no more."

While the situation in Thomas was the reverse of what we have here, the same rule of law applied, and trebling of the actual damages in this case was improper.

It is also important to note that there were no jury issues or findings that appellant Anthony Pools' failure to provide an adequate plan for the adequate control of surface drainage water was a false, misleading or deceptive act. Neither was there a finding that the appellees were induced to enter the contract by any such agreement by Anthony, or that any such agreement by Anthony adversely affected the Ragsdales or was a producing cause of their damage. We think such findings were necessary before section 17.50 of the Act could be applied. See *Thomas v. Atlas Foundation Co., Inc., supra; Freedom Homes of Texas, Inc.*

*v. Dickinson,* 598 S.W.2d 714 (Tex.Civ.App. —Corpus Christi 1980, writ ref'd n.r.e.); *Staley v. Terns Service Co., Inc.,* 595 S.W.2d 882 (Tex.Civ.App.—Waco 1980, writ dism'd); *Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d 290 (Tex.Civ. App.—Waco 1978, writ ref'd n.r.e.).

Finally, we decline to reverse that part of the judgment awarding attorneys' fees to appellee in accordance with the jury findings on that issue. Although appellant would have us hold that the fees were improperly awarded because of the inapplicability of the Deceptive Trade Practices Act, we find that appellee properly asked for attorneys' fees pursuant to Tex.Rev.Civ. Stat.Ann. art. 2226 (1982). Appellant, having limited its appeal to that part of the judgment based on the Deceptive Trade Practices Act, has waived any error in the awarding of fees under article 2226.

Discussions of other points of error in appellant's brief are unnecessary in view of our ruling on points of error nos. 1 and 6.

For all of the foregoing reasons we hold that the Deceptive Trade Practices Act does not apply to the case before us. No complaint has been made of the award of actual damages, under issues 9, 10 and 22.

We therefore reverse and render that part of the judgment which trebled the actual damages and affirm that part of the judgment awarding $3,455.56 actual damages as well as that part awarding attorneys' fees to appellees.

Costs of appeal are adjudged against the Appellees.