BROWN FOUNDATION REPAIR AND
CONSULTING, INC., Appellant,

v.

Donald R. McGUIRE, Appellee.

No. 05–85–00610–CV.

Court of Appeals of Texas,
Dallas.

May 7, 1986.
Concurring Opinion March 21, 1986.*

* The concurring opinion was not withdrawn, and, although antedating the substituted opinion, is concurring to the majority opinion filed May 7, 1986.

James P. Finstrom, Dallas, for appellant.

Melvin H. Wolovits, Barenblat & Wolovits, Dallas, for appellee.

Before AKIN, DEVANY and STEWART, JJ.

## ON MOTION FOR REHEARING

DEVANY, Justice.

Appellant has filed a motion for rehearing which we overrule. However, we note that in the opinion of this court dated March 21, 1986 we relied upon *Pool v. Ford Motor Co.,* 29 Tex.Sup.Ct.J. 204 (Feb. 15, 1986), when reviewing appellant's no evidence points of error. We now note that the Supreme Court has withdrawn that opinion in *Pool* and issued its new opinion at 29 Tex.Sup.Ct.J. 301 (Tex.1986) (April 2, 1986). Because of this, our opinion of March 21, 1986 is hereby withdrawn and the following opinion is substituted therefor.

Brown Foundation Repair and Consulting, Inc. appeals a judgment in favor of Donald R. McGuire in an action based on the Texas Deceptive Trade Practices Act (DTPA).[1] Brown asserts sixteen points of error which, for the reasons stated below, we overrule.

McGuire purchased a residence with foundation problems. After seeing Brown's yellow page advertising, McGuire called Brown to inspect his foundation and a salesman for Brown came to the house, met McGuire, and inspected the house. The salesman presented McGuire with a package of literature about foundation distress and repair and Brown's repair technique and told McGuire he would prepare a proposal for repair of the foundation. Brown mailed a proposal to McGuire, which McGuire signed and returned to Brown. Foundation repairs were completed by Brown and the house was level. However, the foundation continued to move and McGuire called Brown back to repair the foundation on four separate occasions. Each time Brown re-worked portions of the job and levelled the foundation, the last occasion being after expiration of the one-year warranty period provided in Brown's written limited warranty. In the course of the re-work, an employee of Brown advised McGuire that the cause of the continued movement of the foundation was unknown and suggested that McGuire dig post holes around the foundation in an effort to determine the possibility and source of underground water. McGuire refused.

Thereafter, Brown refused to make any further attempts to repair the foundation, blaming the continuing movement on "persistent moisture change" which Brown claimed was excluded by the written warranty, although the written warranty did not expressly so provide. McGuire then unsuccessfully sought the return of his money. McGuire then filed suit under the DTPA.

McGuire's position at trial was that he was induced to contract with Brown by the representation that Brown would correct his "problem," meaning analyzing the cause of his foundation movement as well as the repair of his foundation. Brown took the position that correction of McGuire's "problem" meant levelling his foundation in accordance with its experience and advising as to the apparent cause of the movement. The matter was tried to a jury which awarded McGuire actual damages and additional damages, finding that Brown had made knowing violations of the DTPA.

### Parol Evidence

In points of error numbers one and eleven, Brown complains that the trial court

---

1. Unless otherwise stated all statutory references are to the Deceptive Trade Practices—Consumer Protection Act. TEX.BUS. & COM.CODE ANN. §§ 17.41—17.63 (Vernon Supp.1986).

erred in submitting certain special issues and in rendering judgment on such issues because the parol evidence rule prevents proof of oral representations as to the quality of goods or services which vary the terms of a written contract. In *United Postage Corp. v. Kammeyer*, 581 S.W.2d 716, 720–21 (Tex.Civ.App.—Dallas 1979, no writ), we held that evidence extrinsic to a written agreement is admissible to show false, misleading, or deceptive practices as it is to show fraud.

Other courts, in addressing the question of the admissibility of oral representations in DTPA cases, where a written contract exists, have also held the parol evidence rule inapplicable because the oral representations were not being used to contradict or change the terms of the contracts but rather as the basis of the suit. *See Wagner v. Morris*, 658 S.W.2d 230, 232 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Oakes v. Guerra*, 603 S.W.2d 371, 374 (Tex.Civ.App.—Amarillo 1980, no writ). In *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985), the supreme court held that oral misrepresentations can serve as the basis of a DTPA action and that traditional contractual notions do not apply.

Brown argues that the rule in *Anthony Industries, Inc. v. Ragsdale*, 643 S.W.2d 167 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.), should govern. *Anthony* involved a written contract for the installation of a swimming pool by Anthony and a set of plans and specifications with regard to a retaining wall and flagstone decking. A third party performed the actual work on the decking and the retaining wall. When problems resulted from drainage related to the decking and wall, the Ragsdales brought suit under the DTPA alleging that Anthony made warranties to them with respect to the wall and decking in conjunction with the plans and specifications. The court noted that there was a clear understanding in the contract, *as well as orally*, between the parties with regard to the responsibility for the drainage beyond the pool site and that the plans and specifications were furnished as an extra service. Anthony's representations related to the pool and not the other work. Any representations regarding the wall and decking had to do with what other work needed to be done by another independent contractor. The *Anthony* court agreed with the general proposition that parol evidence in connection with the contract for the swimming pool involving DTPA violations would have been admissible, but observed that there was no misrepresentation regarding the swimming pool. The inferior work was done by another contractor who failed to carry out the proposed decking and retaining wall correctly, 643 S.W.2d at 171. Therefore, the parol evidence rule was applicable under circumstances where there were no alleged DTPA violations in connection with the constructions of the swimming pool. 643 S.W.2d at 174.

■ The instant case is clearly distinguishable from *Anthony*. The alleged misrepresentations here related to services which McGuire contended that Brown represented that it would perform. Moreover, since a DTPA cause of action lies in tort and not in contract, extrinsic evidence was admissible to show false, deceptive, or misleading practices and, therefore, traditional contractual notions do not apply. *See Weitzel*, 691 S.W.2d at 600; *United Postage Corp*, 581 S.W.2d at 720–21. Points of error one and eleven are overruled.

### No Evidence and Insufficient Evidence Points

In its points of error two, three, four, five, six, seven, and eight, Brown contends that there was no evidence to warrant submission of certain special issues and no evidence to support the jury's answers to those issues. We disagree. In addition, Brown, in points of error thirteen, fourteen, fifteen, and sixteen, contends that the "trial court erred in entering judgment" because the jury's findings to certain issues were against the great weight and preponderance of the evidence and that the evidence was insufficient to support the jury's answers.

To submit a special issue, it must be supported by some evidence. *Imperial Insurance Co. v. Ellington,* 498 S.W.2d 368, 375 (Tex.App.—San Antonio 1973, no writ); TEX.R.CIV.P. 279. In deciding a "no evidence" question, the appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely and judgment rendered for the appellant unless the interest of justice requires another trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). In reviewing "factually insufficient evidence" points, we consider all the evidence including any evidence contrary to the judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980).

We note that on rehearing of *Pool v. Ford Motor Co.,* 29 Tex.Sup.Ct.J. 301, 303 (Tex.1986) (April 2, 1986) the supreme court announced the rule "to liberally construe the points of error in order to obtain a just, fair and equitable adjudication of the rights of litigants. We look not only at the wording of the points of error, but to the argument under each point to determine as best we can the intent of the party." Since we do not agree that there is no evidence to support these findings, we construe these points as insufficiency points under TEX.R. CIV.P. 422 and hold that there is ample evidence to support the findings.

We have already held that the parol evidence rule did not bar the admission of extrinsic evidence as to Brown's representations. The record shows that Brown advertised in the yellow pages as "consultants, soil mechanics and chemists." The advertisement went on to represent that Brown "wrote the book" on foundation repairs and that one should "ask about our work guarantee." McGuire testified that, during the course of the sales pitch, a salesman gave him a packet of promotional literature which stressed technical expertise and superior workmanship. The statement that a competent analysis was re-

quired before repairs could be done was repeated in numerous sections of the literature. Further, McGuire testified that he did not initially receive a copy of Brown's warranty and at no point before payment to Brown were Brown's warranty limitations disclosed to him. After the foundation work was thought to be completed and the one-month grace period that Brown Foundation suggested had passed, McGuire contracted for and incurred expenses for the repair of the brick work, interior plastering, painting, and tile work damaged by the prior foundation movement. It appears clear from the record that McGuire relied upon the superior knowledge representations in contracting with Brown.

We conclude that there was sufficient evidence to support the submission of the special issues and the jury's answers with regard to whether Brown violated the DTPA and whether such violations were the producing cause of McGuire's damages. We overrule points two, three, four, five, six, seven, eight, thirteen, fourteen, fifteen, and sixteen.

### Motions for Instructed Verdict and Judgment N.O.V.

Brown contends in points of error nine and ten that the trial court erred in denying its motions for instructed verdict and judgment n.o.v. We disagree. In determining whether a motion for instructed verdict should have been granted, we are bound to view the evidence and inferences therefrom in the light against the instructed verdict. An instructed verdict is proper only when there is no evidence, or where the evidence is of such a character as to be of no probative force or value. *Hamill v. Brashear,* 513 S.W.2d 602, 611 (Tex.Civ. App.—Amarillo 1974, writ ref'd n.r.e.); *Mundy v. Stiles,* 257 S.W.2d 750, 752 (Tex. Civ.App.—Waco 1953, writ ref'd n.r.e.). Brown specifically contends that there was no evidence of the cause and measure of McGuire's damages. Brown asserts that, to justify the submission of the damage issue, McGuire had to show his damages

according to some common law measure and that his damages were produced by Brown. A review of the record with regard to the issue of causation shows that McGuire contracted with Brown for foundation repair and that within three months cracks reappeared due to foundation movement. Brown acknowledged the movement and represented that repairs would be made. The combined testimony of McGuire's experts was that there had been foundation movement in excess of ¼ inch and that the damage to the exterior brick work, interior walls, and paint was caused by the foundation movement. There was some evidence that Brown's failure to live up to its representations was the producing cause of McGuire's damages.

█ Brown does not complain of the amount of damages; rather it complains that McGuire offered no evidence of any damages because the repair estimate was dated approximately 3 1/2 years after the completion of Brown's work and further the amounts for cosmetic repairs were excluded by the written contract and warranty. We disagree.

In an action under the DTPA, the general rule for damages is that the consumer can recover all of his actual damages, which are defined as damages recoverable at common law. *Ybarra v. Saldana,* 624 S.W.2d 948, 952 (Tex.App.—San Antonio 1981, no writ). Courts have approved various measures to determine the amount of damages. In the present case, McGuire asked for reasonable and necessary cost of repairs. This measure has been expressly approved in *Jordan Ford v. Alsbury,* 625 S.W.2d 1, 2 (Tex.App.—San Antonio 1981, no writ). Brown apparently complains that the evidence supporting the reasonable and necessary cost of repair reflected the cost of repairs at the time of trial instead of at the time of the completion of Brown's work. Brown's failure to effect promised repairs was a continuing breach; hence the cost of repair shown at the time of trial is the proper measure under the DTPA. *See Robinson Machinery Co. v. Davis,* 689 S.W.2d 286, 288 (Tex.App.—Waco 1985,

writ ref'd n.r.e.); *Salais v. Martinez,* 603 S.W.2d 296, 297 (Tex.Civ.App.—El Paso 1980, no writ). The jury is also free to consider that the price of repairs has increased since the cause of action occurred. *Terminix International, Inc. v. Lucci,* 670 S.W.2d 657, 664 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

█ Brown's argument that the amounts attributable to brick work, wall repair, and painting are excluded by the terms of the written contract and warranty is without support since the jury found that it was Brown's deception which was a producing cause of such damages. We overrule points of error nine and ten.

### Notice

Brown next contends in point twelve that McGuire failed to prove that he gave the written notice required by section 17.50A(a). Section 17.50A(a) requires, as a prerequisite to filing a suit seeking damages under the DTPA, written notice at least 30 days before filing the suit, advising the prospective defendant of the consumer's complaint, and the amount of the consumer's actual damages and expenses, including attorney's fees reasonably incurred in asserting such claim. Brown contends that McGuire did not establish that the notice letter was received by Brown and further complains that the demand letter set out no legitimate claim. We disagree.

█ Brown is correct that notice is a prerequisite to filing suit under the DTPA. *See Pool Co. v. Salt Grass Exploration,* 681 S.W.2d 216, 219 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Hollingsworth Roofing Co. v. Morrison,* 668 S.W.2d 872, 875 (Tex.App.—Dallas 1984, no writ). However, Brown filed no special exceptions or a plea in abatement and failed to object to lack of notice. The court in *Pool Co.* held that the failure to plead and prove notice in the absence of an objection as to lack of notice is not fatal to an action under the DTPA because such issue has been waived. *Pool Co.,* 681 S.W.2d at 219.

Further, we note that a copy of a letter dated January 20, 1983 from McGuire's attorney addressed to Brown, was admitted into evidence and, attached to this letter, was the receipt for certified mail which is customarily issued by the post office. Although the record does not contain a signed receipt evidencing Brown's receipt of the notice, Brown offered no evidence that it had not received the letter. Under similar facts, the court in *Terminix*, 670 S.W.2d at 665–66, held that the evidence was sufficient that notice had been given. We find that there was sufficient evidence that Brown received notice 30 days prior to the initiation of the lawsuit.

In addition, we have reviewed the content of the notice letter, and we hold that the letter adequately identifies McGuire's claims and the minimum amount to make him whole. Point of error twelve is overruled.

The judgment of the trial court is affirmed.

AKIN, J., files a concurring opinion.

AKIN, Justice, concurring.

I reluctantly concur in the result reached by the majority. The decision in this case is, unfortunately, dictated by the holdings in *Weitzel v. Barnes*, 691 S.W.2d 598 (Tex. 1985), and *United Postage Corp. v. Kammeyer*, 581 S.W.2d 716 (Tex.Civ.App.—Dallas 1979, no writ). This is unfortunate because, in my view, the courts in those two cases incorrectly extended the applicability of the DTPA far beyond its intended scope. Although I recognize that in enacting the DTPA the legislature created a new statutory cause of action, I find it absurd to suggest that in doing so the legislature intended to do away with well-settled doctrines of contract and tort law.

In *Kammeyer*, a panel of this court held, in effect, that by alleging a cause of action under the DTPA a plaintiff can avoid the effect of the common law doctrine of merger. In that case, the plaintiff signed a written contract with the defendant. The contract, which plaintiff testified that he had read and fully understood, contained certain express provisions and further provided that plaintiff was not relying on any oral or written representations, promises, or warranties other than those contained in the written contract. Plaintiff later sued defendant, asserting that certain oral representations allegedly made by defendant violated the DTPA. Some of these oral representations were the *exact converse* of express provisions in the written contract. A trial court judgment in plaintiff's favor was affirmed on appeal, despite the provisions in the written agreement.

The supreme court carried *Kammeyer's* departure from common law principles one step further in *Weitzel v. Barnes*. The *Weitzel* court, which cited *Kammeyer* with approval, held that even where a written contract drafted by the plaintiff exists, oral representations made prior to the execution of the written contract and not integrated into the contract "are not only admissible but can serve as the basis of a DTPA action." *Weitzel*, 691 S.W.2d at 600. In so holding, the court somewhat cryptically stated that "traditional contractual notions do not apply." *Id.*

Furthermore, the *Weitzel* court was not satisfied to lay waste only to "traditional contractual notions." In effect, the court also eliminated the concept, common to both tort and contract law, that a defendant's actions must be an actual cause of plaintiff's damages in order for a plaintiff to recover. The supreme court accomplished this by holding that a plaintiff need not rely on the representations which form the basis of his DTPA claim in order to recover on that claim. Instead, a plaintiff need only persuade the trier of fact that the representations were a "producing cause" of his damages. However, I am in accord with Justice Gonzalez, who dissented in *Weitzel*, in questioning how a representation that was not relied upon can ever be an actual cause of a plaintiff's damages.

It is apparent to me that the *Weitzel* and *Kammeyer* decisions have inserted much unnecessary uncertainty into an important area of the law. A written contract, no

matter how carefully negotiated and drafted by the parties, is subject to being brushed aside if a party brings a DTPA action alleging that contradictory oral representations were made and obtains a finding of fact in his favor. This situation is untenable and should not be the law.

In this respect, I agree with the position of Justice Gonzalez as expressed in his dissenting opinion in *Weitzel:*

This case demonstrates how far we have strayed from the Legislature's intent of protecting the uneducated, the unsophisticated and the poor against false, misleading and deceptive practices. I cannot believe that the Legislature ever intended for the Deceptive Trade Practices Act to be used to bail out an attorney who does not inspect the *used* house he purchases even though he had actual notice, prior to closing, that the city had condemned the property.

\*   \*   \*   \*   \*   \*

It should not be that any misrepresentation made in a vacuum, or made under circumstances that clearly showed its falsity and prevented reliance thereupon, would support a cause of action under the Act. This is necessarily true because the Legislature drew a statute requiring some type of causal connection between the deceptive act or practice and the actual damages suffered.

Yet, the court's opinion offers no guidance as to what *is* required to prove producing cause. In this case, and in other cases involving misrepresentations, what other proof could there be except reliance? Indeed, the court ignores this facet of the question presented on appeal, and allows an attorney cognizant of all facts at the time of closing to lure his vendors into a snare, swiftly draw it tight around them, and recover treble damages.

In summary, it is absurd to allow a consumer to recover treble damages for a misrepresentation if that misrepresentation did not induce the consumer to enter into the contract.

*Weitzel,* 691 S.W.2d at 601, 603 (emphasis in original).

In the case at bar, the plaintiff was an engineer whose job entailed the reading of complex contracts. Plaintiff admitted that he purchased the house at a price approximately 25% lower than prices of comparable homes in the neighborhood and that he was aware at the time of purchase that its foundation was faulty. Plaintiff had solicited several bids before retaining Brown to perform the repairs.

Plaintiff was obviously not one of the unsophisticated, uneducated, or unwary consumers whom the DTPA was intended to protect. Rather, plaintiff has used the DTPA not as a shield against a seller's unconscionable conduct, but as a sword with which to extort treble damages from a firm that did more than was required by the written contract in an effort to satisfy its customer.

I reluctantly concur.