AMERICAN COMMERCIAL
COLLEGES, INC.,
Appellant,

v.

Dianna DAVIS, Appellee.

No. 11–90–166–CV.

Court of Appeals of Texas,
Eastland.

Dec. 19, 1991.

Rehearing Denied Jan. 9, 1992.

Roger L. Glandon, Glandon, Erwin, Scarborough, Baker & Gravley, Abilene, for appellant.

David L. Hooper, David L. Hooper & Associates, Abilene, for appellee.

## OPINION

ARNOT, Justice.

Dianna Davis, appellee, enrolled in American Commercial Colleges, Inc., appellant, seeking a business administration degree. Davis sued appellant for violations of the Texas Deceptive Trade Practices Act (DTPA or the Act), TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987 & Supp.1991), alleging that appellant misrepresented the quality of its teachers, equipment, and training aids. The jury found that appellant knowingly made false representations which were the producing cause of Davis' damages. Appealing the $28,000.00 judgment rendered against it, appellant complains in seven points of error that the jury questions were improperly framed and did not embrace the ultimate issue and that there is no evidence to support the jury's finding of the misrepresen-

tations, producing cause, mental anguish, attorney's fees, and additional damages. We affirm in part and reverse and render in part.

Davis decided, after seeing a newspaper ad and several television commercials, that she could acquire the job skills she needed at an American Commercial College. Davis went to appellant's Abilene campus office on August 22, 1986, and spoke with the college's registrar, Rebecca Lorraine Sharp Hahn. Davis then signed the enrollment certificate, tendered a deposit of $500.00, and returned home with a copy of the college's catalogue.

That evening, Davis read the catalogue aloud to her mother. The picture it painted made Davis enthusiastic about her decision to pursue a business degree from the college. She chose not to cancel the contract within 72 hours, although she was aware she could. On September 8, 1986, Davis started classes and tendered $3,000.00 towards her outstanding tuition balance. Shortly thereafter, Davis became disappointed, believing that the catalogue representations had misled her.

The catalogue promised such things as qualified teachers, modern equipment, a low teacher to student ratio, and excellent training aids. In her accounting class, Davis instead found that the college actually provided one unqualified teacher in a room with seating for 42 students, all taking different level courses, with only two 10-key adding machines. The only training aid was an unused overhead projector. The instructor was Hahn, who also served as the registrar. Hahn supported Davis' claims that the college did not provide all that its catalogue promised. Other witnesses testified to outdated typewriters and poorly maintained, antiquated office equipment which frequently broke down. Witnesses also described other examples of misrepresentations contained in the catalogue.

In its first and third points of error, appellant complains that Jury Questions Nos. 1 and 5 were improperly framed and did not embrace the ultimate issue. These questions asked the jury to find whether appellant had made one or more of a list of specific representations to Davis before she began her classroom studies. The jury found that appellant had made misrepresentations in violation of Section 17.46(b)(5), (7), and (23). In its second and fourth points of error, appellant complains that there is no evidence that the misrepresentations were a producing cause of appellee's damages.[1]

Appellant's first four points of error are all based on the premise that the misrepresentations contained in the catalogue could not have induced appellee to enter into the agreement because they were made after she signed the contract. Appellant argues that, as a matter of law, the misrepresentations could not have been a producing cause of appellee's damages. Appellant contends that the jury questions should have been limited to any representations made by appellant prior to Davis' signing of the contract rather than to any representations made by appellant to Davis before she began her classroom studies. Consequently, appellant argues that the questions were improperly framed and did not address the ultimate issue. We disagree with appellant's premise.

The catalogue contained representations that induced Davis to complete the

---

1. A "no evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of the evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Commonwealth Lloyd's Insurance Company v. Thomas*, 678 S.W.2d 278 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.). Cal-

vert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L. REV. 361 (1960).

In determining a "no evidence" point, we must consider only the evidence and inferences which tend to support the finding and disregard all evidence and inferences to the contrary. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld.

contract with appellant. On August 22, 1986, Davis executed the agreement which provided for a total tuition of $4,340.00: $500.00 was payable upon the signing of the contract and the balance was due in monthly installments of $426.66. The contract provided: "A full refund will be made to any student who cancels the enrollment agreement or contract within 72 hours ... after the enrollment contract is signed by the prospective student." Davis testified that, during this 72–hour period, she read the catalogue aloud to her mother and, based on its representations, elected not to exercise her cancellation rights. Encouraged by the representations in the catalogue, her mother furnished the $3,000.00 which Davis tendered towards her tuition.

Appellant cites *Royal Globe Insurance Company v. Bar Consultants, Inc.*, 577 S.W.2d 688 (Tex.1979), and *Anthony Industries, Inc. v. Ragsdale*, 643 S.W.2d 167 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.), as authority for its premise that post-contract misrepresentations could not be a producing cause of Davis' DTPA claim. In *Anthony*, the Ragsdales contracted with Anthony for the installation of a swimming pool. The Ragsdales wanted a flagstone deck around the pool and, because of the slope of their lot, a rock retaining wall. Presenting a plan showing the location of the house, pool, deck, and wall, Anthony advised the Ragsdales that it did not do stonework. The Ragsdales hired Anthony to construct the pool but contracted with Kees Fireplaces to do the stonework. Faulty workmanship by Kees caused the Ragsdales' damages. The Ragsdales brought suit, not on the pool contract with Anthony, but under the DTPA for damages which they alleged were caused by Anthony's misrepresentations that if its plans were followed there would be no problems with drainage. The Ragsdales' house was flooded on several occasions due to the faulty retaining wall. The court found that the representations made by Anthony as to the plans were not the type of representations as contemplated by Section 17.46(b)(7). The court said:

When we talk about misrepresentations under the Deceptive Trade Practices Act, we are talking about statements, promises, or representations made before the contract is signed in order to induce the signing thereof.

The court found no evidence that Anthony had made any representations about the walk or retaining wall.

In *Royal Globe*, Bar Consultants purchased an insurance policy from Tully Embrey, an agent of Royal Globe. Royal Globe represented to Bar Consultants that the policy covered vandalism when, in fact, it did not. After a vandalism loss, Bar Consultants contacted Embrey. His secretary told Bar Consultants to repair the damage because they were covered. When Royal Globe denied coverage, Bar Consultants sued alleging violations of the DTPA. The jury found that Royal Globe had made a misrepresentation as to coverage prior to the loss and that Embrey had made a misrepresentation as to coverage after the loss. The Court, in holding that there was no evidence to support the latter finding, noted that there was no evidence that Bar Consultants took any action based on the post-loss representation to its injury or damage and that, since Bar Consultants was going to have the damage repaired anyway, it could not have been "injured" or "adversely affected" by Embrey's post-loss representation.

■ *Royal Globe* and *Anthony* are factually distinguishable. In the instant case, appellant would have us look no further than the events on August 22nd, the date the contract was executed. However, after such date and within the 72–hour provision under the contract, Davis relied to her detriment upon the representations contained in the catalogue. Unlike *Anthony*, there is some evidence that appellant's representations in its catalogue were false and misleading. Unlike *Royal Globe*, there was reliance based upon these representations. There is some evidence that appellant's post-contract representations were a producing cause of Davis' loss.

In answer to appellant's argument, Davis argues that any representation, pre-con-

tract or post-contract, can be actionable without reliance. *Weitzel v. Barnes,* 691 S.W.2d 598 (Tex.1985). However, we need not extend this part of the holding in *Weitzel,* which was criticized both in the dissent and in *Brown Foundation Repair and Consulting, Inc. v. McGuire,* 711 S.W.2d 349 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), because, in the instant case, Davis did rely on the post-contract representations to her detriment. Appellant's first four points of error are overruled.

In its fifth point of error, appellant argues that there is no evidence to support the jury's finding of mental anguish. We disagree.

The court in *How Insurance Company v. Patriot Financial Services of Texas, Inc.,* 786 S.W.2d 533 (Tex.App.—Austin 1990, writ den'd), addressed mental anguish in DTPA cases, holding that "in order to establish mental anguish a plaintiff must show more than mere worry, anxiety, vexation, embarrassment, or anger" to support a finding of mental anguish. See also *Roberts v. U.S. Home Corporation,* 694 S.W.2d 129, 136 (Tex.App.—San Antonio 1985); *Trevino v. Southwestern Bell Telephone Company,* 582 S.W.2d 582 (Tex.Civ. App.—Corpus Christi 1979, no writ). As the court in *Roberts* stated:

> The term "mental anguish" implies a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, [resentment], or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from such painful emotion as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

Davis testified that she felt severe disappointment that the course was not as promised, indignation at the months of "runaround" and poor instruction that she did receive, and wounded pride at being "had" and that she was so full of despair that she dropped out of the college. Further, she testified that she had felt frustrated, sick to her stomach, and stolen from and that she had lost nights of sleep worrying and had been bothered by the knowledge that

she had been "had." There is some evidence that Davis suffered more than mere worry or anxiety.

 Appellant further argues that Davis' lack of physical injury bars a mental anguish recovery. We disagree. A DTPA plaintiff may recover upon the showing of either (1) a willful tort, a knowing violation, willful wanton disregard, gross negligence or (2) a resulting physical injury. *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 117 (Tex.1984); *Farmers and Merchants State Bank of Krum v. Ferguson,* 617 S.W.2d 918, 921 (Tex.1981). Moreover, *How* questions the continued viability of the necessity of a willful or knowing finding as prescribed by *Luna* in light of the Supreme Court's recognition of the tort of "negligent infliction of mental anguish" in *St. Elizabeth Hospital v. Garrard,* 730 S.W.2d 649 (Tex.1987). Regardless of *How's* observation, in the case before us, the jury found that appellant "knowingly" made the false or misleading representations which were a producing cause of Davis' loss. These findings are sufficient to support the award. *Luna v. North Star Dodge Sales, Inc.,* supra; *Kold–Serve Corporation v. Ward,* 736 S.W.2d 750 (Tex. App.—Corpus Christi 1987), *dism'd,* 748 S.W.2d 227 (Tex.1988); *Miller v. Dickenson,* 677 S.W.2d 253 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). The fifth point of error is overruled.

 In its sixth point of error, appellant challenges the award of "court costs" by the jury. In answer to a jury question, the jury found that the reasonable and necessary costs were $4,000.00. Costs should not have been submitted as a jury question. The right to costs is based entirely on statutes or procedural rules; the trial court is the proper authority to determine and award costs. TEX.R.CIV.P. 125 et seq. Consequently, whether or not supported by the evidence, the jury's answer to Jury Question No. 11 was immaterial. The answer to an immaterial question should have been disregarded by the trial court in rendering judgment, and the answer to an immaterial question should be disregarded by the appellate court even

where the trial court considered it. TEX. R.CIV.P. 301. *Owens v. State,* 342 S.W.2d 183 (Tex.Civ.App.—Fort Worth 1961, no writ). See also the cases cited in *Pure Ice & Cold Storage Company v. Exchange Bank & Trust Company,* 408 S.W.2d 319 (Tex.Civ.App.—Dallas 1966), *reversed on other grounds,* 415 S.W.2d 897 (Tex.1967). Appellant's sixth point of error is sustained.

In its seventh point of error, appellant argues that there was no evidence to support the jury's finding that $15,000.00 in attorney's fees incurred by Davis were reasonable and necessary. We agree.

Davis' attorney testified about the amount of time he had spent on the case as well as the amount of his hourly charges. Davis asked the jury to award her $19,656.00 in attorney's fees. The jury awarded $15,000.00 in attorney's fees and found that such costs and fees were reasonable and necessary. However, there is no testimony as to the necessity or reasonableness of these fees.

 The reasonableness and necessity of attorney's fees are fact questions and must be supported by evidence. *Oakes v. Guerra,* 603 S.W.2d 371 (Tex.Civ.App.—Amarillo 1980, no writ); *Hennessey v. Skinner,* 698 S.W.2d 382 (Tex.App.—Houston [14th Dist.] 1985, no writ). The granting of a "no evidence" point usually requires the reviewing court to render, not to remand. However, Davis argues that she is entitled to a remand on this issue urging *Smith v. Smith,* 757 S.W.2d 422 (Tex.App.—Dallas 1988, writ den'd), as authority. We disagree.

The court in *Smith,* also a DTPA case, would imply that the proper remedy is to sever and remand the issue of attorney's fees when there is no evidence of the reasonableness of the fees. In *Smith,* the court said:

When a trial court *grants* an award of attorney's fees without any evidence in the record to support such an award, the proper action on appeal is to remand that part of the judgment awarding attorney's fees for a determination of the reasonableness of the amount of attorney's fees to be awarded.

The *Smith* court adopted this language, hence its holding, from *First National Bank of Irving v. Shockley,* 663 S.W.2d 685 (Tex.App.—Corpus Christi 1983, no writ), and *Blumenthal v. Ameritex Computer Corporation,* 646 S.W.2d 283 (Tex.App.—Dallas 1983, no writ), both of which are appeals of default judgments by writs of error.

 No evidence is required to support a default judgment because the defendant's failure to appear or answer is taken as an admission of the allegations in the plaintiff's petition. However, proof is required with respect to damages that are unliquidated or not proven by an instrument in writing. *Alvarado v. Reif,* 783 S.W.2d 303 (Tex.App.—Eastland 1989, no writ); *Bertsch & Company, Inc. v. Spells,* 687 S.W.2d 826 (Tex.App.—Eastland 1985, writ ref'd n.r.e.). In *Smith,* the court severed and remanded the action as to the attorney's fees. Unlike unliquidated damages in default judgment cases, we see no compelling reason to treat the necessity of proof for the reasonableness or necessity of attorney's fees in a DTPA case different from any other burden of proof imposed upon a plaintiff.

 Further, Davis argues that she is entitled to a remand on this issue urging as authority *Satellite Earth Stations East, Inc. v. Davis,* 756 S.W.2d 385 (Tex.App.—Eastland 1988, writ den'd), in which this Court held that an award of attorney's fees is mandatory if a DTPA violation is found. We disagree. The Act provides that a prevailing party shall be awarded court costs and reasonable and necessary attorney's fees. Section 17.50(d). However, that award must be supported by some evidence. In *Satellite,* even though there was evidence of reasonable and necessary attorney's fees, the jury found the reasonable value to be zero. Davis presented no evidence as to the reasonableness or necessity of her requested attorney's fees. Appellant's seventh point of error is granted.

The judgment of the trial court is affirmed as to the award of $9,000.00 for

Davis' actual damages plus the court costs which are properly taxed under the procedural rules and statutes. The judgment of the trial court is reversed and rendered as to the award of $15,000.00 in attorney's fees and the $4,000.00 awarded in costs by the jury.