**David S. DIAMOND and Marsha K. Diamond, Appellants,**

v.

**Bob MEACHAM, Bob Meacham & Associates, Inc., and Meacham Construction Company, Inc., Appellees.**

No. 08–85–00112–CV.

Court of Appeals of Texas, El Paso.

Nov. 20, 1985.

Rehearing Denied Dec. 18, 1985.

Sam Snoddy, El Paso, for appellants.

Sam Sparks, Grambling & Mounce, El Paso, for appellees.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

OSBORN, Justice.

This appeal is from a summary judgment denying all relief to the purchasers of a new home in a suit against the builder for failure to provide proper drainage. We affirm.

On July 31, 1979, David and Marsha Diamond entered into a contract with Meacham Construction Company, Inc. for the purchase of a portion of a specified lot on which a new town house was to be built. The contract provided:

> At the time of Closing, Seller and Purchaser will enter into a standard Home Owners' Warranty (HOW) Agreement. Except as set forth in such agreement, Seller makes no other representations or warranties, express or implied, regarding the said property and improvements. Purchaser agrees to enter into the Home Owners' Warranty Agreement and acknowledges that except for the Home Owners' Warranty Agreement Purchaser is buying the property and improvements "as is".

The Home Warranty Agreement executed by the parties on November 29, 1979, specifies that the builder, Meacham Construction Company, Inc., is the warrantor under the agreement and the limited warranty provides:

> *Coverage During First Year.* For one year, beginning on the commencement date filled in on page 1, the Builder warrants that the home will be free from defects due to noncompliance with the Approved Standards and from major construction defects. (A major construction defect is defined).

A booklet entitled "Approved Standards" which is attached to the Home Warranty Agreement under the heading "Site Work" provides:

> Builder Responsibility: The builder is responsible only for establishing the proper grades and swales. The owner is responsible for maintaining such grades and swales once they have been properly established by the builder.

The Diamonds moved into their new home in November or December, 1979. Drainage problems developed with the first hard rain in January, 1980. That was before any yard work was done or a sprinkler system was installed by the Diamonds. Water also drained from a nearby model home into the backyard of the Diamonds' home and flooded their yard. Rain water from the next door neighbor's yard also flooded the backyard of the Diamonds'

house. In December, 1982, a very heavy rain resulted in water flooding the kitchen and dining room in the Diamonds' home. This was more than one year after issuance of the Home Warranty Agreement and no suit was filed for damages under the terms of that agreement. On May 13, 1983, Mr. and Mrs. Diamond filed suit against Bob Meacham, Bob Meacham & Associates, Inc. and Meacham Construction Company, Inc. and among other things alleged violations of the Deceptive Trade Practices-Consumer Protection Act.

These three defendants filed a motion for summary judgment and asserted that the house was sold "as is" and that all warranties were restricted to those in the Home Owners' Warranty Agreement. The plaintiffs filed an answer to the motion with attached affidavits, exhibits and depositions. The court granted summary judgment for all three defendants but did not dispose of their counterclaims. We remanded because the judgment was not final. A motion for nonsuit of the counterclaims was granted and another summary judgment was entered denying Mr. and Mrs. Diamond any recovery. This appeal followed.

■■■ A builder-vendor impliedly warrants that a residence is constructed in a good, workmanlike manner and is suitable for human habitation. *Humber v. Morton,* 426 S.W.2d 554 (Tex.1968). These are separate obligations. *Evans v. J. Stiles, Inc.,* 689 S.W.2d 399 (Tex.1985). We recognize that a purchaser of a new home may waive all express and implied warranties. *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392 (Tex. 1982). That decision does require that the waiver language be clear and free from doubt.

■■ We also recognize that implied warranties are excluded by expressions like "as is." Section 2.316(c)(1), Tex.Bus. & Com.Code; *Mid Continent Aircraft Corporation v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308 (Tex.1978). But, in giving application to that code provision in the *Mid Continent Aircraft* case, the Court noted that Curry County knew the

plane had been wrecked and repaired. In this case, the construction of the house had not been completed and the home would not be available for occupancy for another four months after the "as is" contract was signed. It was impossible for the purchasers to know in July, when the contract was signed, the condition which the house would be in in November when it was completed and the sale closed. We would restrict any "as is" limitation upon a warranty to goods or buildings which are in the condition in which they are to be delivered on the date of the signing of such a contract. Such a limitation is ineffective as to goods or a building to be completed after the date of the contract since they cannot be inspected for defects prior to the signing of the sales contract.

■■ In this case the sales contract provided that Meacham Construction Company, Inc., as seller, makes no other representations or warranties, express or implied except as set forth in the Home Owners' Warranty Agreement. That agreement provided that the builder warrants that the home will be free from defects due to noncompliance with the approved standards. Those standards make the builder responsible for establishing proper grades and swales. The net effect of the three instruments was that the contractor warranted that there would be proper grades. The Diamonds urge that the warranty was breached and that it was a violation of the Deceptive Trade Practice Act. The affidavits, exhibits and depositions do raise a fact issue. The fact that water flooded the kitchen and dining room along with the other evidence certainly indicates the grade in the backyard was not proper. We sustain Point of Error No. One.

■■ Nevertheless, it is asserted that even if a fact issue exists, any cause of action is barred by limitations. Section 17.-56A, Texas Deceptive Trade Practice-Consumer Protection Act, provides:

All actions brought under this subchapter must be commenced within two years after the date on which the false,

misleading or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

In our case the contract was signed on July 31, 1979. The Home Warranty Agreement was executed on November 29, 1979. The house was occupied in late November or early December of that year. The first ponding of water occurred in January, 1980, but no water entered the house until December, 1982. Suit was filed on May 13, 1983. On January 7, 1980, Mr. Diamond wrote a letter about a list of eight items which remained to be completed at his town house. He concluded:

> Number 9 was not promised but I believe something should be done about this. The water run off between units during rain is likely to create serious problems. Would you please ask your people if something can be done about this.

In Mr. Diamond's deposition, the testimony concerning knowledge of the defect is as follows:

Q. When did you start having any type of drainage problems?

A. When we got hard rains.

Q. But do you remember [sic] that would have been?

A. I don't know.

MRS. DIAMOND: In January, 1980, was the first hard rain.

Q. Was that the first one? When we had Bill and Jane over?

MRS. DIAMOND: That was before. That is when I said there was going to be some problem because water was collecting.

Q. Okay. Now, in January, 1980, would be before any grass was planted?

MRS. DIAMOND: That's right, before anything was done with the yard.

    \*    \*    \*    \*    \*    \*

Q. Okay. You have told me that by January then of 1980, you were aware of the drainage problems?

A. Yes.

When Mrs. Diamond was asked about this problem, she testified:

Q. In any event, though, you recall drainage problems where water came up to the house in January of 1980?

A. I am not sure whether it was December or January. As I sat there and thought, it might have been in December because I was teaching school and I was home during the day to see it, so it must have been during the Christmas holidays of that year. And we had a rain and the water was filling in the little breezeway between my house and the Evans' to the point where I became frightened. In fact, this happened every time it rained, I become very apprehensive because I am afraid it will happen again since it did happen once, but at that time, it came and I called Mrs. Rainey, who was Mr. Meacham's representative at the model house and I said Deanna, I am afraid the water is going to come in my house. She said well, I know there is a problem, but nothing has been done about it. That was right after I moved in.

We conclude from this evidence that as a matter of law the plaintiffs had knowledge of facts for a period of more than two years that showed that their builder had not established proper grades and that there existed a serious drainage problem. *Polk Terrace, Inc. v. Curtis,* 422 S.W.2d 603 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.). Mr. Diamond labeled this a serious problem in January, 1980. Although no water entered the house until three years after it was occupied, the Diamonds knew almost immediately after they moved into the house of the serious drainage problem which could only have resulted from a failure of the builder to comply with the site drainage standards.

It has been suggested that the 1979 amendment found in Section 17.56A, Texas Deceptive Trade Practice Act, and which provides a two-year limitation, does not deal specifically with causes of action

based on breach of warranty, unconscionable actions or violations of Article 21.21 of the Texas Insurance Code and the rules and regulations issued thereunder. Bragg, Maxwell, Longley, Texas Consumer Litigation, 2d Ed., sec. 2.12 (1983). Even so, the limitation provision states:

> All actions brought under this subchapter must be commenced within two years * * *.

This provision is a part of Subchapter E headed "Deceptive Trade Practices and Consumer Protection." That subchapter includes Section 17.50(a) which provides a cause of action for "(2) breach of an express or implied warranty." Since the limitation section includes "all actions brought under this subchapter," it must necessarily include actions such as this one under Section 17.50(a)(2) for breach of warranty. *Brooks Fashion Stores, Inc. v. Northpark National Bank,* 689 S.W.2d 937 (Tex.App. —Dallas 1985, no writ). We overrule Points of Error Nos. Two, Three and Four.

The plaintiffs had no contract with Bob Meacham or Bob Meacham and Associates, Inc. These defendants made no representations and provided no warranties as to proper grades. There was no error in granting summary judgment in favor of these parties.

The judgment of the trial court is affirmed.