Kenneth WALKER, Plaintiff-Appellant,

v.

SEARS, ROEBUCK & CO.,
Defendant-Appellee.

No. 87–1438.

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1988.

William A. Smith, Mark Alan Calhoun, Robert C. Brown, Calhoun, Gump, Spillman & Stacy, Dallas, Tex., for plaintiff-appellant.

F. Marianne Matthews, Joan G. Quinters, Matthews, Kroemer & Johnson, Dallas, Tex., for defendant-appellee.

Before RUBIN, KING and WILLIAMS, Circuit Judges.

KING, Circuit Judge:

Plaintiff sued defendant for installing a faulty roof on plaintiff's home in March of 1982. Defendant filed a motion for summary judgment in which it urged that, because the Texas Deceptive Trade Practices Act has a two year statute of limitations, plaintiff's claim was time-barred. The district court agreed and granted defendant's motion; plaintiff appealed. We conclude that plaintiff's breach of an implied warranty claim, which was pleaded apart from and in addition to plaintiff's Deceptive Trade Practices Act claim, is governed by a four year statute of limitations and, therefore, was not time-barred. Consequently, we reverse the district court's judgment with respect to that claim. We agree with the district court, however, that plaintiff's Deceptive Trade Practices Act claim was time-barred; therefore, we affirm the judgment with respect to that claim.

## I.

The underlying facts which bear upon the issues before us on appeal are undisputed. On March 12, 1982, Kenneth Walker ("Walker") entered into a written contract with Sears, Roebuck & Co. ("Sears") to replace the roof on Walker's home in Corsicana, Texas. The contract price for these services was $3,418.97. By early July, the new roof was installed. On July 24, however, a heavy rain fell in Corsicana —the first since the roof was completed— and water leaked into Walker's house. Walker informed Sears about the leaking roof; because he had been transferred to a new city by his employer and was hesitant to list the house for sale as long as the roof continued to leak, Walker also informed Sears that he was eager for the repairs to be made quickly. In response to Walker's requests, Sears on several occasions sent out roofers who attempted to repair the roof. In September 1982, Walker became convinced that the roofers had succeeded; consequently, he accepted a check from Sears for the water damage to the house's interior, had the damage repaired, placed the house on the market, and moved from Corsicana. As the next heavy rain soon demonstrated, however, the roof was not fixed. Walker, therefore, once again began his negotiations with Sears. When no further progress had been made by June 1983—and with the leaking roof adversely affecting his ability to sell the Corsicana residence—Walker took his house off the market. Although Sears apparently continued its efforts to correct the problem into 1985, it never succeeded in making the roof serviceable. Finally, in September 1985, Walker hired an attorney to pursue a claim against Sears.

In his attorney's first letter to Sears on Walker's behalf, the attorney gave notice of Walker's intent to seek multiple damages and attorney's fees from Sears under the Texas Deceptive Trade Practices Act ("the DTPA"). For approximately six months from the date of the first letter, Walker's attorney attempted to negotiate a resolution to Walker's claim with Sears without resorting to litigation. When no agreement had been reached by March 19, 1986, Walker—fearing that additional delay in bringing an action would cause his claim to be barred by limitations—filed suit against Sears in the 13th Judicial District Court of Navarro County, Corsicana, Texas. In his petition, Walker alleged, among other things, that by contracting with Walker, Sears represented that it would install Walker's roof in a workmanlike manner and impliedly warranted that the roofing materials and their installation would be merchantable, would be reasonably fit for their ordinary purpose, and would pass without objection in the trade. For Sears' failure to meet these and other obligations it owed to Walker, Walker sought actual damages of $25,670, remedial and punitive damages under the DTPA, and attorney's fees. On April 11, Sears removed the suit to the United States District Court for the Northern District of Texas on the basis of diversity of citizenship. Shortly thereafter, Sears filed an answer in which it asserted that Walker's claims were time-barred.

On November 3, 1986, Sears followed up on its statute of limitations defense with a motion for summary judgment; as Sears saw it, Walker's "causes of action" were barred because they were not brought within the two year time period in which the DTPA permitted them to be brought. In response, Walker "vigorously denied that his causes of action under the DTPA, misrepresentation, breach of warranty and unconscionable conduct theories" were time-barred. He argued that Sears' failure to properly install a water-tight roof on Walker's home constituted "a continuing breach of express and implied warranties of good workmanship." With respect to his DTPA claim, Walker made two argu-

ments: (1) that because of Sears' "egregious course of dealing" with Walker, Sears should be equitably estopped from asserting its statute of limitations defense and (2) that because Sears continued its attempts to repair the roof into 1985 and because Walker's cause of action "ripened anew" with each and every attempt, the statute of limitations on the DTPA claim never began to run. Shortly after filing his response, Walker—with the district court's approval—amended his complaint to assert his equitable estoppel defense to Sears' limitations claim.

On December 10, 1986, the district court granted Sears, in a two page order, the summary judgment it had requested. In its order, the district court made several findings. First, the court recognized that pursuant to the DTPA's terms, all actions must be brought within two years after the consumer should have known that he had a cause of action; in this case, the court found, Walker knew he had a cause of action by at least September of 1983 and, therefore, his DTPA claim was time-barred when he filed it on March 19, 1986. Second, relying on *Diamond v. Meacham*, 699 S.W.2d 950, 953–54 (Tex.App.—El Paso 1985, no writ), the court found that "[n]ot only is [Walker's] DTPA cause of action barred, but his breach of warranty and his unconscionable conduct actions are also barred." The court then specifically rejected Walker's argument that Sears' failure to complete its repairs meant that Walker had a continuing cause of action until the repairs were made. And finally, with respect to Walker's equitable estoppel defense, the court found that it was "not persuad[ed]" by the summary judgment evidence Walker had filed in support of his argument concerning Sears' conduct.

■ Judgment for Sears was entered along with the order. Nine days later, Walker filed a motion for new trial. In his motion, Walker asserted that the district court's order granting summary judgment showed that the court was confused about exactly what Walker's claims were and the legal theories through which he had pursued those claims. In an attempt to dispel

the court's confusion, Walker focused on the amended complaint. According to Walker, his amended complaint alleged two separate and independent theories of recovery: (1) a breach of warranty claim under the common law and the Uniform Commercial Code; and (2) a claim under the DTPA. In applying the DTPA's statute of limitations to his first claim, Walker alleged, the district court erred. Explained Walker, "The state courts in Texas, as well as the federal appellate courts applying Texas law, have strongly concluded that the four (4) year period of limitations of the Uniform Commercial Code, and that of common law, applies to actions for breach of warranty for defective products and services." Walker also expressed his dissatisfaction with the court's decision, made when Walker's claims were in summary judgment posture, that Walker's equitable estoppel argument was unpersuasive. Since the summary judgment evidence was clearly sufficient to create a fact question, Walker argued, the court had no power to determine on its own that estoppel was not established and, consequently, that estoppel was an unavailing defense to Sears' limitations claim. Despite Walker's arguments, the district court remained unconvinced that it had erred. Noting that "Plaintiff has brought no new arguments for the Court's consideration," the district court denied Walker's motion for new trial on May 15, 1987. Walker filed timely notice of appeal and now urges to us the arguments which failed him before the district court.[1] We begin our consideration of these arguments by acknowledging the standards by which we will review the district court's judgment.

## II.

On appeal, we evaluate a district court's decision to grant summary judgment by reviewing the record under the same standards which guided the district court. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). Consequently, we cannot affirm a summary judgment unless "we are convinced, after an independent review of the record, that 'there is no genuine issue as to any material fact' and that the movant is 'entitled to a judgment as a matter of law.'" *Brooks*, 832 F.2d at 1364 (quoting Fed.R.Civ.P. 56(c)). Under this standard, we must consider fact questions with deference to the nonmovant; when a fact question controls disposition on summary judgment, we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid*, 784 F.2d at 578. We will decide questions of law, however, just as we decide questions of law outside the summary judgment context: *de novo*. *Brooks*, 832 F.2d at 1364. And because Walker's suit was removed to our federal forum based on the parties' diversity of citizenship, we sit as an *Erie* court; therefore, we must settle this dispute by applying Texas law and ruling, to the best of our ability, as would the Texas courts. *Id.* at 1364, 1376.

In this case, the district court first held that as a matter of Texas law, the DTPA's two year statute of limitations controlled the viability of every claim that Walker pleaded. This pivotal ruling led the court to its three remaining conclusions: that the statute of limitations on Walker's claims began to run at least by September 1983, regardless of the fact that Sears continued to work on the roof; that Walker's claims were time-barred because he waited past

---

**1.** Walker also urges one new argument: that the district court erred in failing to hold that Walker's DTPA claim was revived by a written acknowledgement of the justness of Walker's claim made pursuant to section 16.065 of the Texas Civil Practice and Remedies Code. Given that Walker never even suggested the possibility of a revival to the district court, we cannot see how the district court erred in failing to find one. We, of course, follow a general rule of not considering any issue which is raised for the first time on appeal unless "the issue is purely a legal issue and ... consideration is necessary to avoid miscarriage of justice." *Citizens Nat'l Bank v. Taylor (In re Goff)*, 812 F.2d 931, 933 (5th Cir.1987). To determine whether Sears executed a written acknowledgement of the justness of Walker's claim would certainly take us beyond the realm of purely legal issues. Therefore, we do not address Walker's revival argument.

September 1985 before he filed his lawsuit; and that Walker had no affirmative defense which would solve his limitations problem. We begin our review—bearing in mind the standards which we articulated above—with the court's initial holding. And our first step in determining whether the DTPA's limitations period applied to all Walker's claims is to determine exactly what claims Walker pleaded.

■ On this question, the parties disagree. Walker argues, pointing to paragraph four of his amended complaint, that he pleaded a breach of implied warranty claim[2] arising out of his contract with Sears in addition to the DTPA claim which he set out in paragraph three.[3] Sears, in response, agrees that Walker pleaded a DTPA claim but argues that Walker's attempt to plead implied warranties in paragraph four of his amended complaint was ineffective. The warranties which Walker alleged in paragraph four, Sears explains, are implied warranties which arise under Chapter 2 of the Texas Uniform Commercial Code ("the Code") with respect to the sale of goods. *See* Tex.Bus. & Com.Code Ann. §§ 2.314, 2.315 (Tex. UCC) (Vernon

1968). However, Sears asserts, Walker's contract with Sears is a service contract and is not governed by the Code; therefore, Walker failed to successfully allege an implied warranty claim separate and apart from his DTPA claim. On at least one point we must agree with Sears: the provisions of the Code do not control Walker's action.

Chapter 2 of the Code applies only to transactions which involve the sale of goods. Tex.Bus. & Com.Code Ann. § 2.102; *Brooks*, 832 F.2d at 1373; *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392, 394 (Tex.1982), *overruled in part on unrelated issue in Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex.1987). At the very least, Walker's contract with Sears involved both the sale of roofing materials (which qualify as goods) and the rendition of installation services (which do not). The Texas Supreme Court has held that when a contract involves the sale of both services and materials, "the question [of whether Chapter 2 of the Code governs the transaction] becomes whether the dominant factor or 'essence' of the transaction is the sale of the materials or the services."

2. Below, Walker also argued that his action against Sears was based on breach of an express warranty. During the oral argument before this court, however, Walker specifically disclaimed any intention to pursue recovery on an express warranty theory. Therefore, we do not determine whether the pleadings in this case asserted an express warranty theory.

3. Paragraph three of Walker's amended complaint reads:

At the time of this transaction as described above, Defendant represented that Defendant's agents, servants or employees would install Plaintiff's roof in a workmanlike manner to Plaintiff's satisfaction. The representations by Defendant were false, misleading and deceptive in that Plaintiff's roof has leaked continuously since Defendant first attempted to work on the same. The roofing materials were of inferior quality, and the roof installation crews were inadequately trained with insufficient expertise to perform the task of installing Plaintiff's roof. The foregoing representations violate § 17.46(b) of the Texas Deceptive Trade Practices—Consumer Protection Act in that they constitute representations that goods and services have characteristics, uses or benefits which they do not have and that said goods and services were of a particu-

lar standard, quality or grade when they were of another.

Paragraph four of the amended complaint reads:

Plaintiff would further show that at the time of Plaintiff's purchase of a new roof to be installed by Defendant, Defendant was a dealer in roofs and roofing materials and held itself out to the public as having knowledge or skill particular to that business. Accordingly, Defendant impliedly warranted that the roofing materials and their installation would be merchantable, that they would be reasonably fit for the ordinary purpose for which they were to be used and that both the roofing materials and services would pass without objection in the trade under the subject contract. However, this warranty was breached in that neither the roofing materials nor the roofing installation services were as warranted but rather were both defective in that Plaintiff's roof has leaked continuously since precisely the time that Defendant began working upon it.

Paragraph five of the amended complaint asserted Walker's unconscionability cause of action. Neither party disputes that the unconscionability cause of action arose under the DTPA.

*Robichaux,* 643 S.W.2d at 394; *accord Montgomery Ward & Co. v. Dalton,* 665 S.W.2d 507, 511 (Tex.App.—El Paso 1983, no writ). In determining the essence of Walker's transaction with Sears, we are guided by the Texas Supreme Court's analysis in *Robichaux* and the El Paso Court of Appeal's analysis in *Montgomery Ward.* In *Robichaux,* the supreme court reviewed a contract which provided that the defendant would " 'build, construct, and complete ... and furnish and provide all labor and material to be used in the construction and erection' " of a new house. *Robichaux,* 643 S.W.2d at 394. Based solely on the nature of the contract, the court concluded that "[c]learly, the 'essence' or 'dominant' factor of the transaction was the furnishing of labor and the performance of work required for constructing the house." *Id.* One year later, the *Montgomery Ward* court determined that the Texas Supreme Court's decision in *Robichaux* dictated the answer to the question before it: whether a written contract in which Montgomery Ward agreed to provide materials and services for the installation of a roof was governed by the Code. Following the Texas Supreme Court's lead, the appellate court held that "[T]he essence or dominant factor of the transaction before us was the furnishing of the labor to install the roof." *Montgomery Ward,* 665 S.W.2d at 511. Given the striking similarity between Walker's agreement with Sears in this case and the written contract at issue in *Montgomery Ward,* and given the *Montgomery Ward* court's reliance on *Robichaux,* we likewise conclude that the service component of Walker's contract with Sears was dominant; therefore, we agree with Sears that Walker did not plead a successful implied warranty claim under Chapter 2 of the Code. We do not, however, accept the conclusion Sears claims must flow from the success of its argument: that because Walker alleged a Chapter 2 implied warranty claim that must—because of the nature of the contract between Sears and Walker—fail, Walker actually alleged only a DTPA claim.

The Federal Rules of Civil Procedure require only notice pleading—that is, a " 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)(2)). The Rules also explicitly require that all pleadings "be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). Consequently, in reviewing Walker's amended complaint we "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley,* 355 U.S. at 48, 78 S.Ct. at 103. The question we answer, therefore, is not whether Walker's pleadings disclose an implied warranty claim which has been alleged with the utmost skill and precision, but whether Walker's pleadings reasonably put Sears on notice to defend against a breach of implied warranty claim arising from his contract with Sears. To that question, we answer "yes."

■ Read as a whole, Walker's amended complaint informed Sears that Walker's suit was based on a contract between Sears and Walker for the installation of a new roof. It also informed Sears that the premise of Walker's claim was that Sears, by improperly installing the roof, failed to live up to its obligations under that contract. Finally, it is clear from paragraph four of the amended complaint that the particular contractual obligations on which Walker intended to focus were the implied warranty obligations which arose from the contract as a matter of law. Walker's only misstep was in particularizing the Chapter 2 implied warranties, which apply only to the sale of goods, instead of the analogous implied warranty that in Texas accompanies a contract for the repair or modification of existing tangible goods or property —that the service will be performed in a good and workmanlike manner, *see Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349,

354 (Tex.1987).[4] Were we to hold Walker's amended complaint to a strict technical standard, we might conclude that this single misstep bars Walker from asserting his implied warranty cause of action; however, we have concluded that to do so on the facts of this case would not do substantial justice and would result in the type of unnecessarily narrow interpretation which the Supreme Court cautioned against in *Conley.* We have no doubt that in this case Sears has been adequately apprised of the true nature of Walker's implied warranty claim. We hold, therefore, that separate from his cause of action under the DTPA, Walker's amended complaint alleged that Sears breached an implied warranty which arose from the contract between Walker and Sears.

■ Having decided that Walker's amended complaint asserted these two separate causes of action, we are now ready to examine the district court's conclusion that like his DTPA claim, Walker's warranty cause of action is governed by the DTPA's two year statute of limitations. Sears argues, and the district court agreed, that the conclusion is required by the language of section 17.565 of the DTPA and the El Paso Court of Appeals' decision interpreting that language in *Diamond v. Meacham,* 699 S.W.2d 950 (Tex.App.—El Paso 1985, no writ). Section 17.565 is the DTPA's limitations section; it dictates that:

> All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.

Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987) (formerly Tex.Bus. & Com.Code Ann. § 17.56A). In *Diamond,* the El Paso appellate court examined the reach of this provision—and, Sears asserts, demonstrated the section's applicability to Walker's breach of warranty claim—when it made the following comments:

> It has been suggested that the 1979 amendment found in Section 17.56A, Texas Deceptive Trade Practice Act, and which provides a two-year limitations, does not deal specifically with causes of action based on breach of warranty.... Brag, Maxwell, Longley, Texas Consumer Litigation, 2d Ed., sec. 2.12 (1983). Even so, the limitation provision states:
>
> > All actions brought under this subchapter must be commenced within two years....

This provision is a part of Subchapter E headed "Deceptive Trade Practices and Consumer Protection." That subchapter includes Section 17.50(a) which provides a cause of action for "(2) breach of an express or implied warranty." Since the limitation section includes "all actions brought under this subchapter," it must necessarily include actions such as this one under Section 17.50(a)(2) for breach of warranty. *Brooks Fashion Stores, Inc. v. Northpark National Bank,* 689 S.W.2d 937 (Tex.App.—Dallas 1985, no writ).

---

4. This implied warranty was officially recognized by the Texas Supreme Court in *Melody Home,* a case decided one year after Walker filed his amended complaint in this case. In tracing the development of this implied warranty, the supreme court noted in *Melody Home* that since 1968, that court had recognized that "a builder/vendor impliedly warrants to a purchaser that a building constructed for residential use has been constructed in a good and workmanlike manner...." 741 S.W.2d at 352. Later in the opinion, the court also observed that a number of courts of appeals in Texas had already expressly or impliedly recognized that repair services also carry an implied warranty that they will be performed in a good and work-

manlike manner. *Id.* In support of this latter contention, the court cited eight appellate court cases decided between 1962 and 1985 which applied the implied warranty to services ranging from brick patio construction and house repair to swimming pool installations and book printing. *Id.* at 352 n. 2. By finding that Walker in 1986 alleged a cause of action which was not officially recognized by the Texas Supreme Court until a year later, therefore, we are not holding that Walker's admittedly imprecise pleading gave Sears notice of a claim which did not exist in theory or practice at that time. The claim was both recognized and applied by the appellate courts years before Walker filed his amended petition.

699 S.W.2d at 953–54. We do not agree with Sears or the district court that either section 17.565 or the quoted language in *Diamond* supports the result the district court reached in this case.

The question before the court in *Diamond* was straightforward: when a plaintiff pleads a breach of warranty action under section 17.50(a)(2) of the DTPA, is that action subject to section 17.565's two year limitations period? The question arose because section 17.565 contains ambiguous language. Although the first sentence of the provision begins by decreeing that "all actions" brought pursuant to Subchapter E must be brought within two years, the sentence ends by explaining that the two year limitations period is judged in relation to when the "false, misleading, or deceptive act or practice" occurred. Section 17.46(b) of the DTPA, of course, provides the Act's "laundry list" of false, misleading, or deceptive acts or practices, and section 17.50 of Subchapter E permits the consumer to recover for a laundry list violation; section 17.50 also, however, permits a consumer to recover for the breach of an express or implied warranty, an unconscionable action or course of action, and a violation of article 21.21 of the Texas Insurance Code—none of which are included in the DTPA's laundry list of false, misleading, or deceptive actions or practices. Because section 17.565's first sentence can be construed so that the section either does or does not apply to these non-laundry list claims, various commentators—including the one the El Paso court cited in *Diamond* —have suggested that courts should not apply section 17.565's two year limitations provision to DTPA claims based on warranty, unconscionability, and Insurance Code violation theories. *See* D. Bragg, P. Maxwell & J. Longley, Texas Consumer Litigation § 2.12 (2d ed. 1983); M. Curry, *The 1979 Amendments to the Deceptive Trade Practices–Consumer Protection Act,* 32 Baylor L.Rev. 51, 77–78 (1980); *but see* R. Goodfriend & M. Lynn, *Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act,* 33 Sw.L.J. 941, 1001 n. 344 (1979). When the court in *Diamond* held that section 17.565 applies to actions under section 17.50 for breach of warranty, therefore, the court was simply rejecting the interpretation urged by these commentators and adopting the interpretation which the Dallas court of appeals had already set out in *Brooks Fashion Stores, Inc. v. Northpark Nat'l Bank,* 689 S.W.2d 937, 942–43 (Tex.App.—Dallas 1985, no writ).

To say that *Diamond* supports Sears' position that Walker's contractual implied warranty claim is governed by the DTPA's two year limitation period is, therefore, to fail to understand the difference between the claim before the district court in *Diamond* and the claims Walker raised here. In *Diamond*, the plaintiff asserted only one claim: a DTPA claim for breach of an implied warranty. In this case, as we explained above, Walker alleged two distinct claims: a common law implied warranty claim based in contract and a DTPA claim based on Sears' misrepresentations (a laundry list violation) and unconscionable conduct, see *supra* note 3 and *infra* note 5. Because the claim before the court in *Diamond* was so different, *Diamond* cannot be read to support Sears' contention that section 17.565 applies not only to DTPA claims, but also to claims based on other theories of recovery which are joined in a lawsuit with DTPA claims.[5] We have, in

---

**5.** At various points in its brief on appeal, Sears seems also to argue that the district court used the DTPA's limitations period to judge the timeliness of Walker's implied warranty claim because that claim either (1) was brought under the DTPA or (2) only existed under the DTPA. We disagree. On the first point, the pleadings are clear. Walker did not plead his DTPA claim as a breach of implied warranty claim; instead, by alleging that Sears made "representations that goods and services have characteristics, uses or benefits which they do not have and that said goods and services were of a particular standard, quality or grade when they were of another," Walker specifically premised his DTPA claim on the violation of two provisions of the DTPA's laundry list. *See* Tex.Bus. & Com.Code Ann. §§ 17.46(b)(5), (b)(7).

The sole support for Sears' second point comes from one sentence in *Melody Home:* "We hold that an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner is available to con-

fact, found nothing in Texas law which supports Sears' contention. The language of section 17.565 does not support it; that section explicitly applies only to actions "brought under" the DTPA. No other language in the DTPA supports it; in fact, section 17.43 seems to refute it by providing that the DTPA's provisions "are not exclusive" and that its remedies "are in addition to any other *procedures* or remedies provided for in any other law." Tex. Bus. & Com.Code Ann. § 17.43 (Vernon 1987) (emphasis added). And finally, the case law in Texas does not support it; we have found a number of cases in which plaintiffs have joined other causes of action with their DTPA claims and the Texas courts have, without comment, applied the DTPA's statute of limitations to the DTPA claims and non-DTPA statutes of limitations to those other claims. *See, e.g., Johnston v. Barnes*, 717 S.W.2d 164, 165–66 (Tex.App.—Houston [14th Dist.] 1986, no writ); *Xarin Real Estate, Inc. v. Gamboa*, 715 S.W.2d 80, 85 (Tex.App.—Corpus Christi 1986, no writ); *Brooks*, 689 S.W.2d at 940–45. The district court erred, therefore, in finding that the viability of Walker's implied warranty claim was determined by the DTPA's two year statute of limitations.

The remaining question, of course, is whether Walker's implied warranty claim was time-barred under the statute of limitations provision which did apply to it. To answer that question, we must first determine what the applicable statute of limitations provision was. The Texas Supreme Court concluded in *Certain-Teed Prods. Corp. v. Bell* that "a warranty which the law implies from the existence of a written contract is as much a part of the writing as the express terms of the contract, and the

action to enforce such a warranty is governed by the statute pertaining to written contracts." 422 S.W.2d 719, 721 (1968); *accord Conann Constructors, Inc. v. Muller*, 618 S.W.2d 564, 566 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.); *W.R. Weaver Co. v. Burroughs Corp.*, 580 S.W.2d 76, 80 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.). Texas has never had a statute of limitations provision which expressly pertained to written contracts. During the time period relevant to Walker's action, however, a Texas statute did provide that actions for debt must be brought not later than four years after the cause of action accrued. *See* Tex.Rev.Civ.Stat.Ann. art. 5527 (Vernon Supp.1985) (repealed 1985, now codified at Tex.Civ.Prac. & Rem.Code Ann. § 16.004 (Vernon 1986)). This statute is important because "[T]he phrase, 'actions for debt,' has been liberally construed to embrace actions for money damages for breach of contract, whether the contract was oral or written." *Brooks*, 689 S.W.2d at 941 (citations omitted). Consequently, a breach of contract action by Walker against Sears would have been subject to article 5527's four year statute of limitations, *see id.* at 942; under the Texas Supreme Court's decision in *Certain-Teed*, therefore, Walker's implied warranty claim was subject to that same limitations period. Accepting the district court's determination that Walker's cause of action accrued by at least September 1983, Walker's lawsuit, filed March 19, 1986, was timely with respect to the implied warranty claim. We agree with Walker, therefore, that the district court erred in dismissing his contractual implied warranty claim on statute of limitations grounds. We turn to Walker's DTPA claim.

sumers suing under the DTPA." 741 S.W.2d at 354. This sentence, Sears seems to argue, implies that the warranty does not exist outside of the DTPA. In making this argument, however, Sears overlooks a basic principle of law under the DTPA. As the Texas Supreme Court has explained, the DTPA "does not create any warranties; therefore any warranty must be established independently of the act." *La Sara Grain v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex. 1984); *accord Melody Home*, 741 S.W.2d at 355. In *Melody Home*, the supreme court recognized

that the implied warranty to perform in a good and workmanlike manner arises by operation of law in contracts for the repair or modification of existing tangible goods or property; it also recognized that the warranty cannot be disclaimed. 741 S.W.2d at 353, 355. We cannot, therefore, agree with Sears' apparent thesis that a plaintiff can recover under the DTPA for a breach of the implied warranty recognized in *Melody Home* but cannot recover for the breach of that same warranty under a basic contract theory.

With respect to this claim, Walker has two arguments. The first urges us to find that Walker actually filed his DTPA claim before the two year statute of limitations period ran; the second urges us to hold that even if Walker's DTPA claim was filed outside the period of limitations, a fact issue exists as to whether Sears should be estopped from asserting the limitations defense. After carefully considering these arguments, we find that we must reject them both.

■ Walker's first argument is premised on his characterization of Sears' obligation to Walker. Sears, Walker explains, was obliged to install a serviceable roof on Walker's home; therefore, its repeated failures to repair the roof constituted an ongoing and continuous breach of that obligation which prevented the statute from running. As support for the argument, Walker cites *Brighton Homes, Inc. v. McAdams,* 737 S.W.2d 340 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.), *Brown Found. Repair and Consulting, Inc. v. McGuire,* 711 S.W.2d 349 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), and *Salais v. Martinez,* 603 S.W.2d 296 (Tex.Civ.App.—El Paso 1980, no writ). The courts in these cases, Walker points out, were each faced with determining whether the proper measure of damages for a failure to repair is the cost of repair at the time the repair was attempted or the cost of repair at the time of trial. *See Brighton Homes,* 737 S.W.2d at 343; *Brown,* 711 S.W.2d at 353; *Salais,* 603 S.W.2d at 297. In resolving the question, each court recognized, as the *Brighton Homes* court explained, that:

> At common law, when one isolated event does not cause all the damage to the property, but rather the total damage is the result of a continuing cause, actual damage is not determined immediately after the injury begins. Where there is a continuing cause of damage, measuring the damage immediately after the initial injury would be unduly restrictive and would not compensate plaintiffs fully for their injury....

737 S.W.2d at 343. The courts' concern about making plaintiffs whole led each court to one conclusion about the proper measure of damages. In the words of the *Salais* court, "The failure to repair was a continuing breach so that the cost of repair [at the time of trial] would be a proper measure of damages. The cause of action for failure to repair still existed so long as they were not made." 603 S.W.2d at 297. The relevance of these cases to his DTPA claim, Walker asserts, is clear: If Sears' failure to make repairs was a continuing breach for the purpose of determining damages, it was also a continuing breach for statute of limitations purposes. The district court therefore penalized Walker, Walker concludes, by not recognizing both the continuing nature of the breach and that because of the continuing nature of the breach, the statute of limitations on Walker's DTPA action was delayed.

The problem with Walker's argument is that it has apparently been rejected by all the Texas courts to consider it. As far as we can tell, the argument was first made to and considered by the Texas Supreme Court in 1907. *See Fort Smith v. Fairbanks, Morse & Co.,* 101 Tex. 24, 27, 102 S.W. 908 (1907). In its opinion in *Fort Smith,* the supreme court said:

> The Court of Civil Appeals held that the defendant's cause of action was for the original breach of warranty which occurred when the pump was found to be insufficient soon after its installation, on June 15, and that it was barred by limitation when defendant's first plea in recognition was filed November 11, 1904. One of defendant's contentions, in opposition to this view, is that the damage claimed as a result of the breach, the loss of the rice crop, accrued within two years before the plea was filed, and that his cause of action for that damage then arose. As to this, we agree with the Court of Civil Appeals that the original breach of the contract, if it were unaffected by the subsequent transactions, would have given a right of action at once, including the right to recover all such damages as proximately resulted, whether they had then accrued or not, and that limitation would therefore have run from the time of that breach.

101 Tex. at 27, 102 S.W. 908. Fifteen years after *Fort Smith* was decided, the Austin Court of Civil Appeals faced the same argument in *Bishop-Babcock-Becker Co. v. Jennings*, 245 S.W. 104 (Tex.Civ.App.—Austin 1922, no writ). In the course of rejecting the argument, that court set forth the Texas Supreme Court's holding in *Fort Smith:*

> The holding was that the cause of action arose at the time of the breach, whether the damages had then accrued or not, and the Texas Supreme Court expressly approved the decision of the Court of Civil Appeals on that point. It was also there decided that the acts of the vendor's agents in undertaking to repair or remedy defects in the machinery, after installation and assurances given, would not affect the question of limitation, but that the statute was put in motion by the breach and discovery thereof, and was not interrupted by subsequent attempts to remedy the defects nor by assurances given.

245 S.W. at 105. The *Bishop-Babcock* court's synopsis of the supreme court's holding in *Fort Smith* was later adopted by the Galveston Court of Civil Appeals in *Cooper-Bessemer Corp. v. Shindler*, 132 S.W.2d 450, 452 (Tex.Civ.App.—Galveston 1939, no writ), and the Houston Court of Civil Appeals in *Richker v. United Gas Corp.*, 436 S.W.2d 215, 218–19 (Tex.Civ. App.—Houston 1968, writ ref'd n.r.e). Just last year, the Dallas Court of Appeals cited *Bishop-Babcock* for the proposition that "[a]n unsuccessful effort to effect repairs in no way affects the question of limitations." *See Muss v. Mercedes-Benz of North America, Inc.*, 734 S.W.2d 155, 159–60 (Tex.App.—Dallas 1987, writ ref'd n.r. e.). Given that all of the authority in Texas which we have located is contrary to Walker's argument, we hold that the district court was correct to reject Walker's continuing breach theory. Walker's DTPA cause of action, therefore, is time-barred unless we accept Walker's final argument that equitable estoppel is available to him on this record as a defense to Sears' limitation defense.

■ Walker's equitable estoppel defense is based on his contention that to induce Walker to delay taking legal action, Sears and its representatives made a series of promises—which they did not intend to keep—to pay, settle, or perform the contractual duties Sears owed to Walker. The district court, it will be remembered, rejected Walker's estoppel defense because it was "not persuaded" by the summary judgment evidence with which Walker supported it. Walker points out on appeal that the standard by which the court should have judged the evidence was whether it was sufficient to raise a fact question, not whether it persuaded the court. We agree with Walker that if the district court rejected the equitable estoppel defense because Walker failed to prove it at the summary judgment stage, the court erred. We have, therefore, evaluated the summary judgment evidence according to the proper standards; even judged by these proper standards, however, Walker's attempt to assert an equitable estoppel defense to save his DTPA claim is unavailing.

The Supreme Court explained in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), what it means to raise, through summary judgment evidence, a genuine issue as to a material fact which will defeat summary judgment. According to the Court, a material issue of fact is not raised if, looking at the summary judgment evidence, a directed verdict under Federal Rule of Civil Procedure 50(a) would be appropriate. The Court explained:

> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable ju-

rors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

*Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Walker's only chance of defeating summary judgment on the DTPA claim was by proving equitable estoppel.[6]

To determine whether summary judgment on that claim was appropriate, therefore, our inquiry is whether reasonable jurors could have found from the summary judgment evidence presented to the district court that Sears should be equitably estopped from asserting its statute of limitations defense. In Texas, equitable estoppel is proved when a party shows (1) that he was unaware of true facts; (2) that the other party, with actual or constructive knowledge of the true facts, materially misrepresented or concealed these facts intending that the party rely on the misrepresentation or concealment; and (3) that his reliance prejudiced him. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952); *Perry Roofing Co. v. Olcott*, 722 S.W.2d 538, 542 (Tex.App.—Fort Worth 1986), *aff'd*, 744 S.W.2d 929 (Tex.1988);

*Brooks*, 689 S.W.2d at 945. If any element is missing, of course, the defense fails.

The summary judgment evidence from which we must find enough support for each element to present a jury question consists of the following documents: a series of inter-office reports made by a Sears employee detailing conversations with Walker from August 1983 to January 1984; a letter from Walker to Sears dated January 28, 1984; a letter from a Sears employee to Walker dated February 13, 1984; an affidavit from Paul Weyandt, a Sears employee, swearing to the accuracy of the information contained in Sears' letter and inter-office reports; Walker's DTPA demand letter to Sears; and four pages of deposition testimony given by Walker.[7] Accepting Walker's testimony as true and reading the documents in the light most favorable to Walker, the following scenario emerges. Walker first informed Sears that the roof leaked in July 1982. Sears twice sent out roofers to repair the roof; after the roofers' second effort, all parties believed that the needed repairs had been made. Therefore, Sears tendered and

---

**6.** Actually, we think there is some question as to whether equitable estoppel continues to exist in Texas as a defense to a limitations claim under the DTPA in this situation. Prior to 1979, the DTPA did not contain its own limitations provision, and the Texas courts relied on other statutes and case law to determine the applicable limitations period. *Brooks Fashion Stores, Inc.*, 689 S.W.2d at 942. As we discussed earlier, section 17.565 was enacted in 1979 and now limits the time in which a DTPA claim can be brought to two years. Section 17.565 also, however, contains the following language:

> The period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action.

Tex.Bus. & Com.Code Ann. § 17.565 (Vernon 1987). The question which this language raises, of course, is whether, by including in the statute of limitations provision a statutory defense which provides a specific and clearly defined remedy for the conduct about which Walker complains, the Texas legislature eliminated the equitable estoppel remedy which Walker is asserting. As has long been recognized in Texas, the legislature clearly had the power to substi-

tute a legal remedy for the previously recognized equitable remedy. *Rogers v. Daniel Oil & Royalty Co.*, 130 Tex. 386, 110 S.W.2d 891, 894 (1937). We see no need, however, to decide whether the Texas legislature exercised that power in this case; we have concluded that even if equitable estoppel remains a valid defense in these situations, Walker has failed to present sufficient evidence to support the defense past Sears' motion for summary judgment.

**7.** These documents do not represent all the summary judgment evidence which the parties provided the district court; however, they are the only documents relevant to the equitable estoppel question. The district court found that Walker knew or should have known that he had a potential cause of action by September 1983. Walker does not dispute the district court's conclusion on this point, and we have confirmed that the statute of limitations on Walker's DTPA claim began to run, as the district court concluded, by at least that date. Walker, therefore, had until September 1985 to bring his DTPA claim. The documents we examine to determine the viability of Walker's equitable estoppel defense include all documents which were either written before or, in the case of Walker's deposition testimony, discuss events which occurred before September 1985—the time in which Sears' action could have prevented Walker from asserting a viable DTPA claim.

Walker accepted a check to cover the damages which had occurred to that point. When Walker discovered that the roof was still leaking, Sears sent out a third set of roofers who, once again, apparently fixed the roof. At that time, Walker began negotiating his claim for additional damages with Sears. On September 2, 1983, a Sears representative asked Walker to submit a figure for which he would settle the claim; although the Sears representative says that Walker had not responded to his inquiry by February 1984, Walker claims that shortly after September 2, 1983, he suggested that $25,000 would compensate him for the additional damage he had suffered. The Sears employee, Walker then claims, asked Walker to document the figure. Walker either refused or failed to do so. In October 1985, Walker filed his DTPA demand letter.

Walker argues that this evidence is sufficient "proof" of the first two elements of equitable estoppel because from it, a reasonable jury could find that Sears both (1) knew and failed to tell Walker that the roof could not be fixed and (2) knew and failed to tell Walker that Sears did not intend to settle Walker's claim. We simply do not see how. The only evidence remotely related to the first point is the fact that three different roofers did not succeed in repairing the roof; without even knowing what was wrong with the roof, we do not think a reasonable jury could conclude simply from the fact that the roof was not fixed that Sears knew it could not be fixed. The only evidence related to the second point is that Sears did not settle the claim after Walker put forth the $25,000 figure. The evidence shows, however, that Sears tendered a check which Walker accepted to cover the earlier damage when the roof was apparently fixed; that a Sears representative admitted that Walker's "roof job was not originally handled in a professional manner which you could reasonably expect from Sears" and asked for an estimate of the additional damage; and that Walker failed to provide the requested documentation to support his $25,000 claim of damages. We do not think that a reasonable jury could conclude from this evidence that Sears had no intention of settling Walker's claim.

Therefore, because Walker's summary judgment evidence was insufficient to raise a jury question concerning his equitable estoppel claim, we conclude that the district court correctly dismissed Walker's DTPA claim as time-barred.

### III.

For the foregoing reasons, we agree with the district court's decision to dismiss Walker's DTPA claim as time-barred. We find, however, that the court erred in holding that Walker's contractual implied warranty claim is also time-barred. Therefore, we AFFIRM the district court's judgment with respect to Walker's DTPA claim, REVERSE the court's judgment with respect to Walker's contractual implied warranty claim, and REMAND for further proceedings consistent with this opinion. Each party shall bear its own costs.